The American Railroad Company of Porto Rico, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandada; El Administrador del Fondo del Seguro del Estado, querellado.

Núm. 289.—*Sometido:* Enero 17, 1944. *Resuelto:* Mayo 10, 1944.

*Mariano Acosta Velarde, Federico Acosta Velarde* y *Donald R. Dexter,* abogados de la recurrente; *Joaquina Pérez Cordero, A. de Jesús Matos* y *Joaquín Correa Suárez,* abogados del Administrador del Fondo del Estado, querellado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

He aquí los hechos que motivaron el presente recurso:

En 1941 un número de trabajadores de la American Railroad Company reclamaron el pago de salarios devengados bajo la Ley Federal Sobre Horas y Salarios. En noviembre 4 de 1941 dicha reclamación fué transigida mediante el pago por la compañía de la suma de $700,000, para ser distribuída entre los obreros reclamantes en pago de la diferencia entre los salarios ya recibidos por dichos obreros y aquellos a que tenían derecho de acuerdo con la ley federal.

Varios obreros lesionados, a quienes se les había pagado dietas de acuerdo con los salarios que devengaron el día del accidente, solicitaron del Administrador el reajuste de sus dietas y compensaciones, a base de los salarios aumentados por la cantidad correspondiente a cada uno de los reclamantes por virtud de la transacción a que ya nos hemos referido. Con ese motivo, el Administrador practicó una investigación de las nóminas de la Compañía en mayo de 1942. Los investigadores designados por el Administrador informaron a éste que la Compañía había dejado de incluir en las nóminas correspondientes a los años fiscales 1938–39, 1939–40, 1940–41 y parte del 1941–42 la suma de $659,999.33, pagada a los obreros por concepto de salarios atrasados. El Administra-

dor procedió entonces a imponer a la Compañía primas adicionales por los referidos años, en la proporción siguiente: ·

| | |
|---|---|
| Oct 28, 1938 a junio 30, 1939 (245 días)__ | $146, 733. 07 |
| Año 1939–40 (365 días)_____ | 218, 602. 31 |
| Año 1940–41 (365 días)_____ | 218, 602. 31 |
| Julio 1, 1941 a Nov. 4, 1941 (127 días)____ | 76, 061. 64 |
| Total_____ | $659, 999. 33 |

En mayo 21, 1943 el Administrador del Fondo notificó a la Compañía recurrente el informe de sus Auditores relativo al período de enero 1, a junio 30, 1942, en el cual se incluían como jornales pagados la suma de $20,554.10 que había sido pagada a los obreros con posterioridad a dicho período, en cumplimiento de la mencionada transacción entre la Compañía y los obreros reclamantes.

No estando conforme con las decisiones del Administrador, la Compañía apeló para ante la Comisión Industrial. En noviembre 1 de 1943 la Comisión dictó su resolución confirmando las dos decisiones del Administrador y al ser solicitada la reconsideración la declaró sin lugar. La Compañía interpuso entonces el presente recurso.

En apoyo de su petición para que revisemos y dejemos sin efecto la resolución recurrida, la compañía recurrente señala en su alegato siete errores que a su juicio fueron cometidos por la Comisión Industrial. Las cuestiones planteadas por dichos siete señalamientos y que nos toca considerar y resolver son las siguientes:

■■ ¿Procedió legalmente el Administrador del Fondo del Seguro del Estado al imponer a la recurrente el pago de primas sobre las sumas pagadas a los obreros, por virtud de la transacción de una reclamación por jornales devengados y no satisfechos, teniendo en cuenta que dichas sumas fueron pagadas con posterioridad a las fechas en que se formularon y pagaron las nóminas correspondientes al período de octubre 28 de 1938 a junio 30 de 1942?

Arguye la recurrente que el Administrador solamente está facultado para tasar y cobrar las primas correspondientes a un determinado año fiscal, tomando como base las nóminas de jornales actualmente pagados por el patrono durante el año fiscal anterior a aquel para el cual se ha de fijar la prima. Cita en apoyo de su contención lo dispuesto en los artículos 25 al 28 inclusive de la Ley núm. 45 de abril 18 de 1935, Ley de Compensaciones por Accidentes del Trabajo.[1]

[1] "Artículo 25.—El Administrador del Fondo del Estado queda por la presente autorizado y facultado para tasar e imponer a todo patrono de obreros y empleados afectados por esta Ley, y se le ordena que le tase y le imponga, cuotas anuales determinadas con arreglo al precedente artículo sobre el importe total de los jornales pagados por dicho patrono a obreros y empleados que tenían o hubieran tenido derecho a los beneficios de esta Ley durante el año anterior a la imposición de las cuotas, si ésta hubiere estado vigente; *Disponiéndose*, que la recaudación de estas cuotas se hará por semestres adelantados y se llevará a cabo por el Tesorero de Puerto Rico, a través de los colectores de rentas internas, y de aquellos funcionarios del Gobierno que, por reglamento, el Tesorero autorizare.

"Dichas cuotas, una vez recaudadas, serán ingresadas en el Tesoro de Puerto Rico, en el Fondo de Seguro del Estado que se establece por esta Ley.

"Las cuotas serán impuestas tan pronto se reciba en la oficina del Administrador el informe por duplicado a que se hace mención más adelante, debiéndose tomar como base la suma total de jornales pagados por el patrono a los trabajadores empleados por él durante el año anterior y los cuales trabajadores tuvieran o hubieran tenido derecho a los beneficios de esta Ley. Si un patrono dejare de pagar el total de las cuotas que le fueran impuestas legalmente dentro del término que le señalare el Administrador, éste podrá concederle una prórroga de treinta (30) días para que el patrono efectúe el pago, y dicho pago será un requisito indispensable para que el Administrador pueda darle efectividad a cualquier póliza de seguro.

"Cualquier patrono que con anterioridad al primero de julio o al primero de enero de cualquier año cesare de estar sujeto a las disposiciones de esta Ley, podrá excusarse del pago de cuotas para el semestre o semestres siguientes, dando el aviso y prueba que exigiere el Administrador del Fondo del Estado de que no estará sujeto a las disposiciones de esta Ley.

"Cualquier patrono sujeto a las disposiciones de esta Ley durante cualquier parte de un semestre deberá pagar las cuotas para dicho semestre completo, teniendo derecho al reembolso, si lo hubiere, que se prescribe en el siguiente artículo; *Disponiéndose*, que en dichos casos los reembolsos podrán efectuarse a la terminación del semestre para el cual fueron pagadas dichas cuotas.

"Artículo 26.—A la terminación de cada año económico, el Administrador comparará la nómina de cada patrono que pagare cuotas de acuerdo con esta Ley en tal año económico, con la nómina correspondiente al año económico precedente que le sirvió de base para tasar, imponer y recaudar las cuotas y si la

No es convincente la argumentación de la parte recurrente. Es cierto que de acuerdo con una interpretación literal y

nómina para el cual estuvo vigente el seguro es mayor que la correspondiente al precedente año económico para el cual fueron tasadas, impuestas y recaudadas dichas cuotas, el Administrador tasará e impondrá y el Tesorero recaudará tal y como se dispone en esta Ley sobre la diferencia, cuotas adicionales en la misma forma y sobre la misma base en que fueron tasadas, impuestas y recaudadas las cuotas originales; y si la nómina para el año durante el cual estuvo vigente el seguro fuera menor que la del año económico anterior para el cual fueron tasadas, impuestas y recaudadas las cuotas, el Administrador reembolsará del Fondo del Estado la proporción de las cuotas correspondientes a la diferencia entre la nómina actual para el año durante el cual estuvo vigente el seguro y el año para el cual fueron tasadas, impuestas y recaudadas dichas cuotas.

''Artículo 27.—Será deber de todo patrono, el presentar al Administrador, no más tarde del día 15 de julio de cada año, un estado por duplicado, bajo juramento, expresando el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de. dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industria durante el año económico anterior. Sobre la suma total de jornales declarados en ese estado será computada la cuota dispuesta en los artículos 25 y 26 de esta Ley; *Disponiéndose*, que todo patrono que empleare trabajadores de los comprendidos en esta Ley por cualquier término o parte de un semestre, deberá presentar el estado por duplicado antes mencionado, bajo juramento consignando el número de obreros, o empleados ocupados, la clase de ocupación y los jornales calculados que serán satisfechos a dichos obreros o empleados y sobre esa suma se computará la cuota a pagar por el patrono, debiendo, al terminar el trabajo de estos obreros o empleados, presentar el patrono, un estado, bajo juramento, igual al anterior, con el importe total de los jornales pagados, sobre cuya suma se hará la liquidación correspondiente, y si esta nómina es mayor que la anterior, el Administrador tasará, impondrá y el Tesorero recaudará tal y como se dispone en esta Ley, sobre la diferencia cuotas adicionales en forma igual a la que anteriormente se dispone.

''Si el patrono dejare de presentar dichos estados en las fechas arriba especificadas incurrirá en un delito menos grave castigable con una multa no menor de cincuenta (50) dólares ni mayor de quinientos (500) dólares, a juicio de la corte. Cualquier corte de distrito, a instancias del Administrador del Fondo del Estado, ordenará al patrono que presente los referidos estados en un término perentorio, y si no los presentare la desobediencia a dicha orden constituirá desacato y será castigada como tal.

''Cualquier patrono que haya estado cubierto por el Fondo del Estado a la terminación del año económico anterior, y que estuviere a cubierto a partir del día primero de julio del año corriente, estará también cubierto dentro del término del primero al quince de julio que se conceda por esta Ley para archivar la nómina o estado; *Disponiéndose*, que todo patrono que no hubiere presentado el estado a que se refiere este artículo dentro del término que aquí se fija, será considerado como un patrono no asegurado.

''El Administrador y aquellos empleados que tengan intervención directa y específica en la tasación, recaudación e investigación de primas quedan expresa-

estricta de los artículos citados, el Administrador al tasar e imponer las cuotas anuales que deberá pagar el patrono ase-

mente autorizados para administrar los juramentos requeridos por esta Ley y ejercitarán todos los poderes y derechos conferidos a los Agentes de Rentas Internas del Departamento de Hacienda.

"El patrono que se considere no obligado a cumplir los requisitos que impone este artículo deberá hacerlo así constar bajo juramento ante el Administrador del Fondo del Estado.

"El seguro de cada patrono por el Estado comenzará a regir inmediatamente después de que haya sido archivada en las oficinas del Administrador del Fondo del Estado su nómina o estado por duplicado, acompañado del importe de la cuota que corresponda al tanto por ciento de los jornales declarados en dicho estado, de acuerdo con los tipos fijados por el Administrador; *Disponiéndose*, que cualquier accidente que ocurra antes de verificarse el pago, será considerado como un caso de patrono no asegurado a menos que el patrono verifique el pago dentro del término fijado por el Administrador del Fondo del Estado, en los cuales casos el seguro empezará a regir desde la fecha en que el patrono archivó la nómina o estado, en la oficina del Administrador.

"Al recibir el pago del patrono, el Administrador del Fondo del Estado remitirá a dicho patrono el recibo de tal pago, el cual será *prima facie* prueba de dicho pago de las primas y del cumplimiento de dicho patrono con las disposiciones de esta Ley. Mientras no se haya hecho este pago por el patrono, dicho patrono no tendrá derecho a las inmunidades provistas por esta Ley con respecto a las lesiones, enfermedades o muertes que pudieran ocurrir a los obreros o empleados de tal patrono durante el período que cubre el pago de dichas primas, y los obreros o empleados de dicho patrono no tendrán derecho a los beneficios que se concedan por esta Ley al sufrir tales lesiones, enfermedades o muerte; pero tendrán derecho a entablar contra el patrono aquellas reclamaciones de acuerdo con el procedimiento fijado en casos de patronos no asegurados.

"REGISTROS DE OBREROS Y EMPLEADOS.

"Artículo 28.—Será deber de todo patrono con derecho a los beneficios de esta Ley el llevar un registro completo de acuerdo con los reglamentos que prescribiere el Administrador, expresando el nombre de cada uno de dichos obreros o empleados, su edad, su sexo, la naturaleza del trabajo hecho y los jornales pagados a cada uno de ellos; *Disponiéndose*, que si algún patrono dejare de cumplir con estos requisitos, incurrirá en un delito menos grave (*misdemeanor*) castigable con una multa de cincuenta (50) dólares a quinientos dólares.

"El Administrador del Fondo del Estado podrá ordenar que se efectúe un examen de todas las nóminas y de los libros de contabilidad de tales patronos por cualquier representante debidamente autorizado por él y será deber de todo patrono el permitir que se haga dicho examen.

"Todo patrono que a sabiendas diere falsamente los informes requeridos por este artículo quedará sujeto a la misma pena prescrita en el precedente artículo por dejar de presentar el estado que se requiere por este artículo, y será, además, responsable al Fondo del Estado por tres (3) veces la diferencia entre la cuota pagada y la cantidad que debió haber pagado, la cual suma será recaudada en la misma forma que se prescribe para la recaudación de cuotas

gurado debe tomar como base "el importe total de los jornales *pagados* . . . durante el año anterior a la imposición de las cuotas"; que las cuotas deben ser impuestas tan pronto como el Administrador reciba el informe requerido por el artículo 27 de la ley; y que en el caso de autos el Administrador tasó y cobró a la Compañía recurrente las cuotas correspondientes a los años en controversia, tomando como base para cada uno de dichos años el importe total de los jornales pagados durante el año anterior. Empero, no encontramos ni en los artículos citados ni en toda la Ley de Indemnizaciones por Accidentes del Trabajo precepto alguno que prohiba al Administrador del Fondo imponer y cobrar cuotas sobre los jornales que un asegurado debió pagar a sus obreros de acuerdo con las leyes vigentes, durante un año determinado, y que no les pagó hasta después de la expiración de ese año.

La ley federal conocida como "Fair Labor Standards Act", aprobada en 1938 (52 Stat. 1060), empezó a regir en Puerto Rico en el segundo semestre del mismo año. Que dicha ley es aplicable a la Compañía recurrente es un hecho sobre el cual no existe controversia alguna. Así lo reconoció expresamente la Compañía ferroviaria en el convenio celebrado en novimbre 7 de 1941 entre ella y más de mil cien obreros, para transigir una reclamación formulada por dichos obreros "por concepto de salarios devengados y no pagados", amparándose en la Ley del Congreso de 1938 de Normas Razonables del Trabajo. Al hacer a cada uno de los obreros reclamantes el pago de la suma que le correspondía, la Compañía le exigió un recibo que en lo pertinente lee como sigue:

---

correspondientes, de acuerdo con esta Ley, e ingresada en el Fondo del Estado.

"No será necesario que el Administrador del Fondo del Estado solicite de los patronos comprendidos en esta Ley que se acojan a los beneficios de la misma, sino que es obligación de todo patrono de obreros o empleados realizar las gestiones necesarias para cumplir dentro del plazo señalado, con la obligación de asegurar la compensación de los trabajadores que empleare, de acuerdo con lo dispuesto en el artículo 18."

"Yo_____he recibido de la American Railroad Company of Porto Rico la suma de_____dollars, en pago de la diferencia entre los salarios devengados por mí desde el día 24 de octubre de 1938 hasta el día 4 de noviembre de 1941 inclusive, y los salarios a que tenía derecho al amparo de la Ley Federal de Normas Razonables del Trabajo, aprobada en 1938, pago que me ha sido hecho y que acepto bajo los términos y condiciones del contrato otorgado el 4 de noviembre de 1941."

Vemos, pues, que por los términos expresos del contrato de transacción y del preinserto recibo, la Compañía recurrente admitió que las cantidades que pagó a cada uno de los obreros reclamantes, con posterioridad al 4 de noviembre de 1941, son las mismas cantidades que dichos obreros tenían derecho a percibir de acuerdo con la ley federal y que la Compañía ferroviaria debió haberles pagado como parte de sus salarios durante el período de octubre 24 de 1938 a noviembre 4 de 1941.

Es indudable que si la Compañía recurrente hubiese pagado a su debido tiempo a sus obreros los salarios fijados por el estatuto federal, el Administrador del Fondo hubiera tenido una oportunidad para tasar e imponer las cuotas cumpliendo estrictamente con las disposiciones pertinentes del estatuto local. Las cuotas anuales deben ser determinadas tomando como base el importe total de los jornales pagados por el patrono a sus obreros durante el año anterior a la imposición de las cuotas. Así lo dispone el artículo 25 de la ley insular. Empero, no creemos que el propósito del legislador haya sido el de hacer el estatuto tan estricto e inflexible hasta el punto de exigir que la única cantidad que puede tomarse como base para la imposición de las cuotas es la cantidad actual y realmente pagada por el patrono a sus obreros durante el año anterior y prohibir que se tome como base la cantidad que debió ser pagada de acuerdo con la ley y que no se pagó a su debido tiempo por culpa, negligencia o error del patrono.

El plan para el seguro de los obreros contra accidentes del trabajo y enfermedades ocupacionales no puede subsistir sin un fondo solvente; y la solvencia del Fondo del Seguro del Estado no podría ser mantenida si el Administrador dejara de cobrar a los patronos las primas sobre las cantidades ganadas por sus obreros durante cada año fiscal, sin tener en cuenta la fecha en que se hizo el pago a los obreros. El propósito fundamental del artículo 25 de la ley es hacer posible el cobro por anticipado de las primas, tomando como base la suma total pagada como jornales durante el año precedente. El artículo 26 es el que provee el procedimiento para que el patrono pague y el Administrador cobre las primas correspondientes a un año fiscal determinado, tomando como base la cantidad total pagada a los obreros durante ese mismo año. De acuerdo con dicho artículo, al terminar el año económico el Administrador debe comparar la nómina de ese año con la nómina del año anterior, que se tomó como base para fijar tentativamente las cuotas del año que se está liquidando. Si la nómina de este año fuere mayor que la del año anterior, el Administrador deberá imponer y recaudar cuotas adicionales sobre la diferencia que resultare; y si dicha nómina resultare menor que la del año anterior, el Administrador deberá reembolsar al patrono la diferencia resultante a su favor. La aplicación del citado artículo hace posible la liquidación de las primas correspondientes a cada año económico, a base de la nómina total de jornales devengados y pagados con cargo a ese año, y hace imposible que el Fondo se beneficie a expensas del patrono y viceversa.

"La Equidad considera como hecho aquello que debió haberse hecho". Esta vieja y sabia máxima nos parece aplicable a un caso como el presente. La Compañía recurrente hizo por fin—*nunc pro tunc*—en noviembre 4 de 1941, aquello que debió haber hecho en las fechas en que pagó a sus obreros por trabajos realizados durante los años de 1938 a 1942. Es justo y razonable que consideremos los pagos efectuados

en 1941 como hechos en las fechas en que debieron haber sido hechos de acuerdo con la ley, para todos los efectos legales, incluyendo la tasación, imposición y cobro de las primas correspondientes a las sumas así pagadas. Sostener lo contrario equivaldría a permitir que la Compañía recurrente se beneficiara y enriqueciera como resultado de su propia culpa, negligencia o error al no cumplir con la ley.

No podrá decirse con fundamento que el Fondo del Seguro del Estado se beneficiará si se le permite cobrar ahora lo que debió haber cobrado en años anteriores. En primer lugar, si el cobro de las primas no se verificó antes no fué por culpa o negligencia del Administrador y sí de la Compañía al no hacer el pago de jornales de acuerdo con la ley federal y a su debido tiempo. En segundo lugar, el Fondo está obligado a pagar las dietas y compensaciones a los obreros lesionados o a los dependientes de los que pierdan su vida en accidentes del trabajo, tomando como base el jornal que el obrero percibía el día del accidente. El Administrador fijó y pagó dietas y compensaciones por accidentes ocurridos en el ferrocarril de la recurrente, durante los años de 1938 a 1941, tomando como base la nómina de jornales sometida por la Compañía para cada uno de dichos años. Alegando que los pagos hechos en 1941, por salarios atrasados, deben considerarse como hechos en las fechas en que debieron haber sido hechos, un número de obreros han solicitado el reajuste de las dietas y compensaciones que les fueron concedidas tomando como base las nóminas sometidas por la Compañía. Si los obreros reclamantes tienen o no derecho al reajuste que solicitan es cuestión que no ha sido sometida a nuestra decisión y por tanto no expresamos opinión en cuanto a sus méritos. Sí opinamos que el Fondo tiene derecho a que se le ponga en condiciones de poder hacer frente a esos reajustes, en el caso de una decisión favorable a los obreros reclamantes.

■ Alega la recurrente que la Comisión Industrial actuó sin jurisdicción al resolver que la ley conocida como "Fair Labor Standards Act" es obligatoria para la recurrente y aplicable a todos sus obreros.

No encontramos en la resolución recurrida pronunciamiento alguno hecho por la Comisión en cuanto a la aplicabilidad de la Ley Federal a The American Railroad Company y sus empleados. Al exponer los hechos, la Comisión hizo constar que los obreros habían reclamado salarios atrasados a los que alegaban tener derecho de acuerdo con la ley federal. Y al exponer la teoría del Administrador, hizo constar que la contención de dicho funcionario era que la ley federal es aplicable a la recurrente.

Ni en sus alegaciones ante la Comisión ni en su alegato ante esta Corte Suprema la recurrente levantó la cuestión sobre la aplicabilidad del estatuto federal. No se cometió el alegado error.

*Por las razones expuestas se confirma la resolución recurrida.*

El Juez Asociado Sr. Snyder no intervino.