PORTO RICAN AMERICAN SUGAR REFINERY, INC., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

Núm. 303.—*Sometido:* Marzo 20, 1944. *Resuelto:* Mayo 12, 1944.

*Vicente Zayas Pizarro*, abogado de la recurrente; *Hon. Procurador General Interino M. Rodríguez Ramos, G. Benítez Gautier, Procurador General Auxiliar* y *Joaquina Pérez Cordero, A. de Jesús Matos, J. Correa Suárez* y *A. Sandín del Manzano*, abogados del Fondo del Estado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

Los hechos en este caso están expuestos sucintamente en la resolución de la Comisión Industrial, que dice en parte como sigue:

"La Porto Rican American Sugar Refinery, Inc., un patrono asegurado en el Fondo del Estado, utilizó durante los años económicos 1940–41 y 1941–42, a los contratistas independientes Sucn. de Miguel Méndez y Sucrs. de Esmoris, para la transportación de sus productos y derivados de los mismos. Fué condición del contrato de transporte, según alega el referido patrono, que los contratistas independientes asegurarían los obreros que usaran en el trabajo, en el Fondo del Estado. Pero el patrono apelante admite que dichos contratistas independientes dejaron de cumplir con la obligación impuéstale de asegurar a los obreros por tódo el período de 1940–41, 1941–42, y admite que tanto el patrono apelante como los contratistas independientes, al dar cuenta con sus nóminas anuales de jornales al Fondo del Estado durante los años 1940–41 y 1941–42, no incluyeron en las mismas los salarios pagados a los obreros o empleados que trabajaron con dichos contratistas independientes.

"Allá para mediados del año 1942, el Sr. Jacobo E. García, en su carácter de Investigador del Fondo del Estado, hizo una investigación de la contabilidad del patrono apelante, cubriendo el período de julio 1ro. de 1940 a junio 30 de 1941, y comprobó la certeza de

los hechos antes expuestos, por lo que el Administrador, al imponer al apelante la cuota preliminar para el año 1942–43, ascendente a la cantidad de $4,857.97, la tasó e impuso a la vez, una prima adicional por los años 1940–41, 1941–42, montante a $2,406.27 por el primero de dichos años, y $1,612.63 por el segundo, cubriendo dicha prima adicional el riesgo en la transportación de los productos del patrono, que llevaron a cabo los contratistas independientes antes mencionados.

"El Administrador notificó tanto la imposición de la prima preliminar para el año 1942–43, como la adicional por los años 1940–41, 1941–42, al patrono apelante, con fecha 8 de septiembre de 1942, y le advirtió que su póliza estaría en vigor desde julio 1ro. de 1942, siempre y cuando que pagara la cantidad de $6,447.89 en o antes de septiembre 23, 1942, y la cantidad de $2,428.98, en o antes de enero 2 de 1943. El montante de la prima a pagar incluyendo la preliminar para el año 1942–43 y la adicional por los años 1940–41, 1941–42, alcanza un total de $8,876.87.

"El patrono pagó los $6,447.89 que debió haber satisfecho en septiembre 23, 1942, en dos plazos, uno en septiembre 21 de 1942, montante a $1,455.53, y el otro en noviembre 21, 1942, montante a la cantidad de $4,992.56.

"Considerando el Administrador que el patrono había pagado fuera de término, lo declaró patrono no asegurado por el período de julio 1ro. de 1942 a noviembre 21 del mismo año."

La Comisión Industrial confirmó la decisión del Administrador del Fondo del Estado. Para revisar la resolución de la Comisión expedimos el auto a solicitud de la Porto Rican American Sugar Refinery Inc.

█ Alega la peticionaria en primer lugar que el pago de $4,992.56 fué efectuado como cuestión de hecho, dentro de una alegada prórroga concedida a tal fin, vencedera el 30 de noviembre de 1942. Pero nada hay en el récord que justifique esta contención. El récord sí demuestra que el 29 de agosto de 1942, la peticionaria sometió un memorándum al Administrador del Fondo del Estado en un esfuerzo para convencerlo de la corrección de su posición, y que esta contención de la peticionaria no fué rechazada finalmente por el

Administrador hasta que el subadministrador le escribió al abogado de la peticionaria el 17 de noviembre. Pero en ese estado de cosas nada encontramos que justifique la conclusión de que se concedió una prórroga para hacer el pago, vencedera el 30 de noviembre. Por el contrario, el Administrador expresamente advirtió a la peticionaria, como hemos visto, que el pago debía hacerse en o antes del 23 de septiembre de 1942. En su consecuencia, la Comisión actuó correctamente al resolver que la peticionaria era un patrono no asegurado desde el 1 de julio de 1942, hasta el 21 de noviembre de 1942 cuando se hizo el pago de $4,992.56. Y toda vez que todos los accidentes envueltos en los casos aquí ante nos ocurrieron entre julio 1, 1942, y noviembre 21, 1942, debe tratarse a la peticionaria como patrono no asegurado durante dicho período y por aquellos accidentes, aún cuando finalmente pagó todas las primas correspondientes al año completo, incluyendo las primas adicionales para los años fiscales que ya habían expirado. (*Sucrs. de J. González* v. *Comisión Industrial,* 61 D.P.R. 306.) La propia peticionaria es la causante de esto al no pagar las primas dentro del término fijado por el Administrador del Fondo del Estado (*Central Cambalache, Inc.* v. *Comisión Industrial,* resuelto el 31 de marzo de 1944, ante, pág. 375).

■■ La peticionaria no alega que no se le exigió que obtuviera póliza alguna contra accidentes del trabajo para cubrir los empleados de los contratistas independientes aquí envueltos.([1]) El artículo 19 de la ley claramente la obliga a hacerlo, si sus contratistas independientes no lo hacen (*Montaner, Administrador* v. *Comisión Industrial,* 59 D.P.R. 285; *Montaner, Administrador* v. *Comisión Industrial,* 57 D.P.R. 272). Pero alega que el Administrador no podía im-

---

([1])El Administrador afirma en su alegato que la póliza en cuestión expresamente incluía los riesgos de transportación. La póliza no está en el récord ante nos, pero la peticionaria no ha impugnado esta afirmación.

poner las primas aquí envueltas, debido a que no se tomó acción sobre esto hasta después de expirados los años fiscales aquí envueltos. La peticionaria cita como autoridad para su posición los casos de *Central Boca Chica, Inc.* v. *Tesorero de P. R.*, 54 D.P.R. 424; y *Am. Railroad Co.* v. *Comisión Industrial*, 61 D.P.R. 314. Pero dichos casos eran diferentes al presente. En ellos se trataba de un patrono *no asegurado* a quien no se podían cobrar las primas una vez vencido el semestre que las mismas cubría—bajo dichas circunstancias nunca existió póliza alguna de seguro. Pero en el presente caso se trata de un patrono *asegurado* que, de conformidad con una investigación posterior realizada con el fin de determinar si deben imponerse primas adicionales para los dos años fiscales anteriores, dejó de incluir en los informes de sus nóminas los salarios de obreros que debieron incluirse.(²) Por tanto, en cuanto a este punto, este caso es análogo al de *The American Railroad Company of Porto Rico* v. *Comisión Industrial*, ante pág. 623, resuelto el 10 de mayo de 1944. Lo mismo que en dicho caso (pág. 632) "Sostener lo contrario equivaldría a permitir que la Compañía recurrente se beneficiara y enriqueciera como resultado de su propia culpa, negligencia o error al no cumplir con la ley." Y, podría añadirse, resolver lo contrario equivaldría a despojar al Administrador de sus facultades para hacer gestiones con el fin de corregir una situación creada por la negligente o deliberada omisión de un

---

(²) El artículo 25 de la Ley de Compensaciones por Accidentes del Trabajo, según fué enmendado por la Ley Núm. 160, Leyes de Puerto Rico, 1942, dispone que "Bajo ninguna circunstancia se extenderá una póliza que cubra solamente una parte de las operaciones de un patrono, dejando otras actividades sin asegurar. El total de operaciones del patrono deberá ser cubierto por una sola póliza. ..." Y el artículo 19 dispone, como hemos visto, que a menos que un contratista independiente estuviere asegurado como patrono, "Todo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros o empleados que estuvieren trabajando o fuere a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado o contratado por dicho patrono; ..."

patrono de incluir todos sus obreros en las nóminas suministradas al Administrador.([3])

*La resolución de la Comisión Industrial será confirmada.*
El Juez Presidente Sr. Travieso no intervino.

---

([3]) Hasta dónde podía ir el Administrador en el pasado con el fin de hacer tales imposiciones adicionales es una cuestión que no está ante nos y sobre la misma no hacemos comentario alguno. Sin embargo, convenimos con la manifestación hecha en el alegato del Administrador de que si en el caso ante nos la "contención [del peticionario] se considerara meritoria, . . . no hay duda que no podrían cobrarse cuotas adicionales ni aun para el año inmediatamente anterior, debido a la imposibilidad física de liquidar en los 15 primeros días del año o dentro de un término .mayor las 10,000 pólizas de seguro obrero que en la actualidad están en vigor." (Palabras en corchetes nuestras). Véanse los artículos 26–28 de la Ley, según han sido enmendados.