MONLLOR & BOSCIO, SUCRS., INC., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

*Número:* CI-62-21          *Resuelto:* 4 de noviembre de 1963

*Leopoldo Tormes García* y *Pascual F. Lanauze Ortiz,* abogados de la recurrente; *Donald R. Dexter* y *Carmen Ana Archeval,* abogados del Fondo del Seguro del Estado.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

El Administrador del Fondo del Seguro del Estado por medio de su Contador, practicó una investigación de los libros de contabilidad de la firma Monllor y Boscio, Sucrs., Inc., encontrando una diferencia entre las nóminas informadas al Fondo del Seguro del Estado y las entradas en los libros de contabilidad de dicho patrono. Dicha investigación comprendía los años 1954–55, 1955–56, 1956–57, 1957–58 y 1958–59 y la deficiencia consistía en que en la nómina de salario informada al Fondo del Seguro no se incluyó la compensación pagada a los obreros por concepto de vacaciones[1] ni la compensación pagádale a fin de año y denominada en los libros del patrono "Compensación Adicional a Empleados".

En mayo de 1961 el Administrador dirigió una comunicación al patrono informándole el resultado de la investigación y que procedería a la liquidación de la póliza de acuerdo con dicho resultado de estar conforme con el mismo.

No estuvo conforme el patrono y recurrió ante la Comisión Industrial alegando fundamentalmente (1) que el Administrador del Fondo del Seguro carece de facultad para imponer

---

[1] En la vista ante la Comisión Industrial el patrono admitió la corrección de la determinación del Administrador del Fondo sobre los pagos por vacaciones hechas a los obreros.

las cuotas adicionales en la forma y oportunidad en que lo hizo; y (2) que los bonos pagados a sus empleados a fin de año son meras gratificaciones no incluibles en la nómina de salarios a los fines de computar la prima del seguro.

La Comisión falló en contra del patrono. Sostuvo el poder o facultad del Administrador del Fondo del Seguro para imponer las referidas cuotas adicionales a base de las disposiciones del Art. 25 de la Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. sec. 26) y además resolvió que los pagos hechos por el patrono Monllor y Boscio a sus empleados a fin de año, aun cuando efectivamente no formaban parte del contrato de servicios, constituyen bonificaciones (o bonos) y no meras gratificaciones, ya que los referidos pagos eran hechos a todos los empleados, y habían venido pagándose durante una veintena de años, lo cual creaba una esperanza (*expectancy*) en el obrero.

Ante nos el patrono señala que son erróneas las anteriores determinaciones de la Comisión.

Sostiene que "las 'facultades' del Administrador para imponer cuotas adicionales le están limitadas en tiempo, o sea, al momento de formalizar la póliza el patrono o al rendir su informe de jornales pagados o declaración de póliza, tal como reza claramente el artículo 25 de la Ley de Compensaciones en su primer párrafo".

Una cuestión similar se suscitó en el caso de *American R.R. Co.* v. *Comisión Industrial*, 63 D.P.R. 623 (1944.). Resolvimos la contención en contra del patrono. A la página 627 dijimos: "No es convincente la argumentación de la parte recurrente. Es cierto que de acuerdo con una interpretación literal y estricta de los artículos citados, el Administrador al tasar e imponer las cuotas anuales que deberá pagar el patrono asegurado debe tomar como base 'el importe total de los jornales *pagados* . . . durante el año anterior a la imposición de las cuotas'; que las cuotas deben ser impuestas tan pronto como el Administrador reciba el informe requerido

por el artículo 27 de la ley; y que en el caso de autos el Administrador tasó y cobró a la Compañía recurrente las cuotas correspondientes a los años en controversia, tomando como base para cada uno de dichos años el importe total de los jornales pagados durante el año anterior. Empero, no encontramos ni en los artículos citados ni en toda la Ley de Indemnizaciones por Accidentes del Trabajo precepto alguno que prohiba al Administrador del Fondo imponer y cobrar cuotas sobre los jornales que un asegurado debió pagar a sus obreros de acuerdo con las leyes vigentes, durante un año determinado, y que no les pagó hasta despues de la expiración de ese año." Más adelante, pág. 631, agregamos: "El plan para el seguro de los obreros contra accidentes del trabajo y enfermedades ocupacionales no puede subsistir sin un fondo solvente; y la solvencia del Fondo del Seguro del Estado no podría ser mantenida si el Administrador dejara de cobrar a los patronos las primas sobre las cantidades ganadas por sus obreros durante cada año fiscal, sin tener en cuenta la fecha en que se hizo el pago a los obreros. El propósito fundamental del artículo 25 de la ley es hacer posible el cobro por anticipado de las primas, tomando como base la suma total pagada como jornales durante el año precedente. El artículo 26 es el que provee el procedimiento para que el patrono pague y el Administrador cobre las primas correspondientes a un año fiscal determinado, tomando como base la cantidad total pagada a los obreros durante ese mismo año. De acuerdo con dicho artículo, al terminar el año económico el Administrador debe comparar la nómina de ese año con la nómina del año anterior, que se tomó como base para fijar tentativamente las cuotas del año que se está liquidando. Si la nómina de este año fuere mayor que la del año anterior, el Administrador deberá imponer y recaudar cuotas adicionales sobre la diferencia que resultare; y si dicha nómina resultare menor que la del año anterior, el Administrador deberá reembolsar al patrono la diferencia resultante a su favor. La

aplicación del citado artículo hace posible la liquidación de las primas correspondientes a cada año económico, a base de la nómina total de jornales devengados y pagados con cargo a ese año, y hace imposible que el Fondo se beneficie a expensas del patrono y viceversa."

" 'La Equidad considera como hecho aquello que debió haberse hecho'. Esta vieja y sabia máxima nos parece aplicable a un caso como el presente. La Compañía recurrente hizo por fin—*nunc pro tunc*—en noviembre 4 de 1941, aquello que debió haber hecho en las fechas en que pagó a sus obreros por trabajos realizados durante los años de 1938 a 1942. Es justo y razonable que consideremos los pagos efectuados en 1941 como hechos en las fechas en que debieron haber sido hechos de acuerdo con la ley, para todos los efectos legales, incluyendo la tasación, imposición y cobro de las primas correspondientes a las sumas así pagadas. Sostener lo contrario equivaldría a permitir que la Compañía recurrente se beneficiara y enriqueciera como resultado de su propia culpa, negligencia o error al no cumplir con la ley." Véase, además, *P. R. Am. Sugar Refinery* v. *Comisión Industrial*, 63 D.P.R. 636 (1944).

Una diferencia entre el caso de *American P.R. Co.* y el presente consiste en que el patrono Monllor y Boscio, Sucrs., Inc., efectuó el pago de los salarios adicionales todos los años en controversia pero no los incluyó en su informe al Fondo de jornales pagados bajo la teoría de que tales pagos adicionales no eran salarios y sí meras gratificaciones. (²) Si su teoría es correcta no procedería la tasación, imposición y cobro de las cuotas adicionales que le notificó el Administrador. Precisa pues hacer un resumen de la prueba que consideró la Comisión al resolver que tales pagos adicionales eran bonos y no meras gratificaciones.

---

(²) El inciso (g) de la Sec. 19–11 del Título 11 de R.&R.P.R. (Reglas y Reglamentos) dispone: "Podrá, asimismo, el Administrador hacer, sin límite de tiempo, cualquier cambio en la póliza a los fines de ajustar la misma si apareciere que la información suplida por el patrono al momento de expedirse o revocarse la póliza fue incompleta o inexacta."

El Sr. Juan Luis Boscio, Presidente de Monllor & Boscio, Sucrs. Inc., declaró en síntesis, que él personalmente era quien contrataba a los obreros; que a cada empleado se le asignaba un sueldo fijo; que los contratos entre patrono y empleado se celebraban verbalmente y eran por tiempo indefinido; que desde que empezó "la obra" cada vez que había un beneficio razonable se le concedía a cada empleado una regalía o bono de navidad a fin de año; que al contratarse a los obreros no se hablaba del bono; que el conceder el bono está sujeto al criterio exclusivo del patrono dependiendo de que la corporación obtuviera ganancias; que de hecho hubo un año (1959) en que no se concedió bonos porque la corporación no obtuvo ganancias y los bonos no han sido uniformes.

A preguntas del Administrador del Fondo del Seguro del Estado declaró el Sr. Boscio que hacía como 20 años que el patrono ha venido concediendo "bono navideño" a todos sus empleados y admitió que todo empleado de la firma Monllor & Boscio puede tener derecho a esperar o tener una esperanza razonable de que si la firma tiene ganancias, cada empleado recibirá un "bono navideño".

El Sr. Juan Ralat fue el Contador del Fondo del Seguro que practicó la investigación en los libros de contabilidad de la firma Monllor & Boscio. Llamado como testigo por el patrono, declaró que Monllor & Boscio contabilizaba el pago que hacía a sus empleados a fin de año como "Compensación Adicional a Empleados" y que ellos tienen "una entrada de jornal donde segregan de sus beneficios cierta cantidad para ser pagada al cierre de sus libros y luego hacen el pago en el mes de diciembre.

El Sr. Angel Lao Santiago declaró que él es contador de la firma Monllor & Boscio desde el año 1934 y nunca ha tenido conocimiento de un caso en que se le haya ofrecido un bono a un empleado al éste ser contratado, siendo de la entera discreción del Sr. Boscio conceder o no el bono.

El Director del Negociado de Servicios Actuariales y Contabilidad del Fondo del Seguro del Estado, Sr. Santiago, declaró que "la norma administrativa en cuanto a la clasificación de nóminas al efecto de tasación e imposición de primas en aquellos casos en que el pago no es el resultado directo de horas de trabajo se ciñe a las Reglas del Boletín Número 8 para Gobernar el Seguro de Compensaciones por Accidentes del Trabajo". Declaró además: "En todo momento se ha establecido que la bonificación es un bono cuando es exigible o hay una esperanza fortuita, lo que se considera como un *'expectancy'*, que se considera a base de la continuidad que tiene la concesión. Si el bono se hace, de acuerdo con el examen de los libros, todos los años, entonces estimamos nosotros que se establece un *'expectancy'* en el obrero, y por lo tanto consideramos eso como un bono. Cuando forma parte del convenio, también lo interpretamos como un bono."

La Ley de Compensaciones por Accidentes del Trabajo (11 L.P.R.A. secs. 1 y siguientes) dispone que todo patrono asegurado al dar cuenta con sus nóminas anuales, deberá incluir en tales nóminas los salarios pagados a todos los obreros y empleados que estuvieren trabajando. Art. 19. Autoriza y faculta al Administrador del Fondo del Seguro del Estado para tasar o imponer a todo patrono regular o permanente de obreros y empleados afectados por la Ley y se le ordena que tase e imponga cuotas anuales *sobre el importe total de los jornales pagados* por dicho patrono a obreros y empleados. Art. 25. El quinto párrafo de este mismo artículo dispone: "Las cuotas serán impuestas a los patronos regulares o permanentes tan pronto se reciba en la oficina del Administrador la declaración de la nómina a que se hace mención más adelante, debiéndose tomar como base, sujeto a investigación y revisión, por el Administrador, *la suma total de los jornales, sueldos y otras remuneraciones* pagadas por el patrono a los trabajadores empleados por él durante el año anterior y los cuales trabajadores tuvieron o hubieran

tenido derecho a los beneficios de este Capítulo." (Énfasis suplido.)

En virtud del poder que le concede la Ley[3] el Administrador aprobó, con fuerza de ley, un Reglamento para regular la Administración del Fondo del Estado.[4]

Por disposición de dicho Reglamento, la prima, a menos que otra cosa se disponga en el mismo, se calculará a base de la remuneración, o sea, del pago en término de dinero con que los servicios prestados se compensen de acuerdo con el contrato de arrendamiento de servicios, e incluirá el valor de manutención, alojamiento u otro beneficio similar. Sec. 19–4 (a). Cuando la manutención o alojamiento u otro beneficio similar constituya parte de la remuneración del obrero o empleado, será deber del patrono hacerlo así constar en sus nóminas de pago con la valoración que corresponda, y en los informes que deba rendir al Fondo del Seguro del Estado. Sec. 19–4 (c). Finalmente el apartado (e) de la misma sección dispone:

"(e) Cuando los empleados sean remunerados total o parcialmente con bonificaciones, comisiones, o sobre la base de tareas, o cualquiera otra base que no sea por el tiempo realmente invertido en trabajar, o con vales, mercancías, créditos, o cualquier sustituto de dinero, tal forma de pago será considerada como salario o parte del mismo y se incluirá en la remuneración realmente devengada e informada al tiempo de computar la prima de la póliza. El informe de la remuneración incluirá los salarios adicionales por todo trabajo realizado en horas extras, salarios pagados en días festivos, y durante período de vacaciones, o enfermedad; pero no incluirá, sin embargo, recompensa especial por trabajos meri-

---

[3] El apartado B, párrafo 8, del Art. 6 de la Ley dispone: ". . . El Administrador tendrá poder para dictar reglas razonables y apropiadas para regular la administración del Fondo del Estado, las cuales al ser aprobadas por el Gobernador y promulgadas debidamente por el Secretario de Estado, tendrán fuerza de ley; . . ."

[4] Boletín Núm. 8, Reglas para Gobernar el Seguro de Compensaciones por Accidentes del Trabajo, dictadas por el Administrador y aprobadas y promulgadas por el Gobernador en julio de 1942. Reglas y Reglamentos de Puerto Rico. 11 R.&R.P.R. secs. 19–1 a 19–11.

torios de descubrimientos, ni meras gratificaciones, ni el resultado de arreglos voluntarios para la distribución de beneficios, a menos que formen parte del contrato de servicios." (Títulos 7 a 12, pág. 412.)

■ De acuerdo con la anterior disposición reglamentaria cuando los empleados son remunerados total o parcialmente con bonificaciones, tal forma de pago será considerada como salario o parte del mismo y se incluirá en la remuneración realmente devengada a los fines de computar la prima de la póliza. Sin embargo, el informe de la remuneración no incluirá, como salarios adicionales, las meras gratificaciones.

Ya hemos visto que el Administrador ha interpretado el Reglamento en el sentido de que "la bonificación es un bono cuando es exigible o hay una esperanza fortuita, lo que se considera como un *'expectancy'*, que se considera base de la continuidad que tiene la concesión. Si el bono se hace, de acuerdo con el examen de los libros, todos los años, entonces, estimamos nosotros que se establece un *'expectancy'* en el obrero y por lo tanto consideramos nosotros eso como un bono. Cuando forma parte del convenio, también lo interpretamos como un bono".

■ Aunque no son obligatorias para los tribunales, las reglas, conclusiones e interpretaciones de los organismos administrativos especializados, le merecen gran consideración y respeto, Como se dijo en el caso de *Skidmore* v. *Swift & Co.*, 323 U.S. 134:

"Consideramos que las decisiones, interpretaciones y opiniones del Administrador bajo esta ley, aun cuando no son mandatorias para las cortes por razón de su autoridad, sí constituyen un cuerpo de experimentado e informado criterio al cual las cortes y los litigantes pueden apropiadamente recurrir para su gobierno. El peso de tal criterio en un caso en particular dependerá de la minuciosidad con que se haya considerado, la validez de su razonamiento, su consistencia con anteriores y posteriores pronunciamientos, y todos esos factores que le dan fuerza para persuadir, aun cuando les falta poder para controlar."

Véanse además, *South P.R. Sugar Co.* v. *Junta*, 82 D.P.R. 847, 864 (1961) y *Colonos de Azucarera Santa Juana* v. *Junta*, 77 D.P.R. 392 (1954).

No puede asegurarse que haya armonía en las decisiones de las cortes americanas en cuanto a cuándo se considera una bonificación como un bono y cuándo se considera como una mera gratificación a los fines de su computación como parte del salario del obrero o empleado para determinar la compensación que le corresponde. Algunos casos consideran como factor decisivo para hacer la distinción el hecho de que la bonificación sea o no exigible (*enforceable*) por el obrero o empleado. Se han considerado como factores determinantes de la exigibilidad 1) cuando la promesa y oferta del bono forma parte del contrato de servicios, 2) cuando en virtud de ella el obrero se compromete a seguir trabajando para el patrono, y 3) cuando el bono se concede en pago de servicios leales [5] Otros casos han decidido que aun cuando el bono no forma expresamente parte del contrato de servicios, si se concede con regularidad durante un número de semanas, meses o años en tal forma que el obrero espera recibirlo, podría considerarse que existe una promesa o contrato implícito entre el patrono y el obrero. [6]

Como regla general se ha sostenido que bonificaciones hechas casual o esporádicamente por el patrono al empleado son meras gratificaciones no computables, como parte del salario del empleado. [7]

■ Sin embargo, la cuestión aquí a decidirse no es si los obreros y empleados de Monllor & Boscio Sucrs., Inc., tienen

---

[5] *Duncan* v. *Cone*, 85 S.E. 203; *Chubb* v. *Allegheny Country Club*, 24 A.2d 550; *Barron* v. *Ambart*, 167 P.2d 925; *Ellis* v. *Victor Electric Products*, 88 N.E.2d 275; *Burns* v. *Lewis Howe Co.*, 266 S.W.2d 14; *Judd* v. *Wasie*, 211 F.2d 826; *Borden* v. *Skinner Chuck Co.*, 150 A.2d 607; *Parrish* v. *General Motors Corp.*, 137 So.2d 255.

[6] *Powell* v. *Republic Creosoting Co.*, 19 P.2d 919; *Wineburgh* v. *Seeman Bros.*, 21 N.Y.S.2d 180; *Moss* v. *Aluminum Co.*, 276 S.W. 1052; *Roberts* v. *Mays Mills*, 114 S.E. 530.

[7] 58 Am. Jur. 798.

derecho a exigir de su patrono el pago del referido bono. Sólo tenemos que resolver si las cantidades pagadas a esos obreros y empleados en concepto de bonos deben incluirse en la nómina del patrono como parte de sus salarios a los fines de computar la prima del seguro, todo ello a la luz de nuestras propias leyes y reglamentos.

■ Ya hemos visto que el Art. 25 impone al Administrador la obligación de tasar e imponer a todo patrono afectado por la Ley cuotas anuales sobre el importe total de los jornales pagados por el patrono a obreros y empleados. El mismo artículo establece que el Administrador tomará como base, sujeto a investigación y revisión, la suma total de los jornales, sueldos y otras remuneraciones pagadas por el patrono a los trabajadores empleados por él durante el año anterior. También hemos visto que el Reglamento para Regular la Administración del Fondo del Estado, que tiene fuerza de ley, dispone que cuando los empleados son remunerados total o parcialmente con bonificaciones, tal forma de pago será considerada como salario o parte del mismo y se incluirá en la remuneración realmente devengada a los fines de computar la prima de la póliza. Y la interpretación administrativa del Reglamento ha sido en el sentido de que si la bonificación no forma parte del convenio se considera como un bono y no como una mera gratificación, cuando la continuidad de su concesión crea en el empleado la esperanza (expectancy) de recibirlo.

Si bien el bono concedido por la recurrida a sus empleados no forma parte del contrato de trabajo, es lo cierto que el patrono ha establecido la costumbre de conceder bonos a todos sus empleados, año tras año por un período de unos 20 años, con excepción de un solo año en que la firma no obtuvo ganancias. El propio Sr. Boscio declaró que todo empleado de la firma puede tener derecho a esperar o tener una esperanza razonable de que si la firma tiene ganancias cada empleado recibirá un bono navideño. Además las cantidades concedidas a los empleados como bonos navideños eran contabilizadas por

el patrono como "Compensación Adicional a Empleados". De hecho de la entrada de jornal el patrono segregaba ciertas cantidades de los beneficios para ser pagadas a fin de año a sus empleados.

A la luz de estos hechos y de la Ley y el Reglamento antes mencionados, convenimos en que no erró la Comisión Industrial al sostener la decisión del Administrador del Fondo del Seguro del Estado.

*Su resolución será confirmada.*