VICENTE QUILINCHINI, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada.

Número: CI-65-1    Resuelto: 29 de abril de 1966

*Virgilio Brunet,* abogado del recurrente; *Donald R. Dexter, Elba de Jesús de Correa* y *G. Méndez Muñoz,* abogados del Administrador del Fondo del Seguro del Estado.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El recurrente es un agricultor que por años ha mantenido vigente una póliza con el Fondo del Seguro del Estado. El 30 de noviembre de 1962 el Administrador le envió una Notifica-

ción de Cobro de Primas de Seguro Obrero. Le notificaba la imposición preliminar de las primas correspondientes al año 1962–63 a base de una nómina total de $62,643.16. La cantidad a ser pagada ascendía a $3,139.46 de la cual correspondía al año anterior, luego de la liquidación final, la suma de $1,043.15. La prima del año 1962–63, luego de las bonificaciones correspondientes, ascendía de $2,096.31. El pago correspondiente al primer semestre ascendente a $2,091.31—la mitad de las primas del 1962–63 más las deficiencias del año anterior—debía ser pagado en o antes del 10 de diciembre de 1962 y el del segundo—$1,048.15—en o antes del 31 de enero de 1963. No fue hasta el 9 de enero de 1963 que el patrono efectuó un pago ascendente a $1,613.30. El 31 de mayo de 1963 el Jefe de la División de Recaudaciones del Fondo le dirige una comunicación al patrono urgiéndole que satisfaga el balance de la cuota impuesta para el año 1962–63 ascendente a $1,526.16. No lo remitió.

Durante el año 1962–63 cinco de los obreros que trabajaron bajo el patronazgo del aquí recurrente sufrieron accidentes. El Administrador declaró al patrono no asegurado por no haberse satisfecho la totalidad de la prima impuéstale. El patrono alega que el pago efectuado en 9 de enero le dio vigencia a la póliza.

Sostiene que el Administrador está en la obligación de imponer la cuota o prima a base de la declaración de nómina que la ley requiere del patrono. Mantiene que una vez que el patrono ha radicado su declaración de nómina, el Administrador no puede alterarla a menos que, según dispone el Art. 25 "hiciere una declaración falsa o fraudulenta, o que de acuerdo con la experiencia obtenida en relación a operaciones similares, fuere evidentemente inadecuada."

El patrono informó que su nómina total para el año 1961–62 ascendió a $51,748.88. Correspondía a:

| | |
|---|---|
| Agricultura General | $ 1,863.73 |
| Agricultura Caña | 31,119.04 |

| | |
|---|---|
| Vaquerías | 6,308.23 |
| Servicio Doméstico | 1,120.00 |
| Oficinistas y Delineantes | 6,229.54 |
| Conservación Edificio | 3,728.64 |

Recibida esta declaración el Administrador acepta todos los renglones antes especificados pero altera el referente a la agricultura de caña y lo establece en $43,393.02.

Establece el Art. 27 de la Ley de Compensaciones a Obreros, 11 L.P.R.A. sec. 28 (ed. 1962), que "será deber de todo patrono el presentar al Administrador, [del Fondo del Seguro del Estado] no más tarde del día 20 de julio de cada año, un estado expresando el número de trabajadores empleados por dicho patrono, la clase de ocupación o industria de dichos trabajadores y la cantidad total de jornales pagados a tales trabajadores o industrias durante el año económico anterior . . . ." Sobre la suma total de jornales declarados en ese estado será computada la cuota dispuesta en los Arts. 25 y 26 de la ley. El Art. 25 establece que "las cuotas serán impuestas a los patronos regulares o permanentes tan pronto se reciba en la oficina del Administrador la declaración de la nómina . . . debiéndose tomar como base, *sujeto a investigación y revisión, por el Administrador,* la suma total de los jornales, sueldos y otras remuneraciones pagadas por el patrono a los trabajadores empleados por él durante el año anterior y los cuales trabajadores tuvieran o hubieren tenido derecho a los beneficios de esta ley." (Énfasis suplido.) Y más adelante el Art. 25 dispone que *"si algún patrono dejare de hacer y presentar la declaración de la nómina en la fecha prescrita por la ley, o de acuerdo con ella, o si voluntariamente o, de otro modo, hiciere una declaración falsa o fraudulenta o, que de acuerdo con la experiencia obtenida en relación a operaciones similares, fuere evidentemente inadecuada, el Administrador, por medio de sus agentes debidamente autorizados, hará la declaración por conocimiento propio y de acuerdo con los informes y datos que hubiere podido obtener."*

(Énfasis suplido.) Y la Sec. 19-10(d) del Reglamento sobre Seguro de Compensaciones por Accidentes del Trabajo dispone que "[e]l estimado de la nómina estará sujeto en todo caso a la aprobación del Administrador del Fondo del Estado." ([1])

■ De lo transcrito vemos que según el Reglamento el estado de la nómina estará sujeto a la aprobación del Administrador y que éste, de acuerdo con la ley, está autorizado, si considera que por la experiencia obtenida en relación a operaciones similares, la nómina declarada resulta inadecuada, a hacer una declaración por conocimiento propio y de acuerdo con los informes y datos que tenga en su poder.

■ En el presente caso el Administrador aceptó todos los renglones de la declaración de nómina del patrono excepto el referente a la agricultura de caña. Evidentemente en el caso del cultivo y recolección de la caña de azúcar el Administrador está en posición de determinar el costo promedio de cultivo, recolección y acarreo hasta el ingenio de una tonelada de caña. Los agricultores de caña le someten anualmente sus costos y dividiendo por las toneladas que cosechan, el Administrador puede determinar el costo por tonelada, lo mismo en relación a toda la Isla que a sectores o barrios específicos. Así, con esta data que está en su poder, puede hacer la determinación de si la declaración del patrono es inadecuada o no. Ahora bien, si el patrono entiende que el Administrador actuó arbitrariamente tiene la oportunidad de demostrarlo ante la Comisión. Puede presentar la prueba pertinente a ese fin, pero no descansar en el punto de derecho invocado por el aquí recurrente. Ver *Figueroa* v. *Comisión Industrial*, 64 D.P.R. 627 (1945) en donde el Administrador del Fondo descartó la nómina informada por el patrono y fijó la prima a base de un coste de $2.00 por tonelada, de acuerdo con el número de

---

([1]) Este Reglamento tiene fuerza de ley. *Ready Mix Concrete* v. *Comisión Industrial*, 92 D.P.R. 37 (1965); *Monllor & Boscio* v. *Comisión Industrial*, 89 D.P.R. 397 (1963).

toneladas de cañas molidas por la peticionaria y siguiendo el promedio de costo uniforme para todos los patronos de la misma industria. Sostuvimos al Administrador en este punto.

En el presente caso el patrono declaró que su nómina de jornales para la caña durante el año 1961–62 fue de $31,119.04 y el Administrador la alteró aumentándola a $43,393.07. Es interesante apuntar que cuando se realizó la investigación de los libros solicitada por el patrono resultó que el monto total de la nómina correspondiente al cultivo, recolección y transportación de la caña era de $40,200.27, suma que se acercaba mucho más a la establecida por el Administrador que a la declarada por el patrono. ([2])

La tesis del patrono de que el Administrador está en la obligación de imponerle la cuota a base de su declaración de nómina es insostenible. Afectaría adversamente el eficiente funcionamiento del Fondo, pues una vez un patrono declara el montante de su nómina, el Administrador no podría alterarla hasta haber realizado una investigación de los libros del patrono. El Fondo ciertamente no tiene las facilidades para hacer anualmente todas las investigaciones que se requerirían si se adoptara esa norma. Esto afectaría el buen funcionamiento del Fondo y para mantenerlo solvente necesariamente habría que aumentar las primas. Así en nada se beneficiarían los patronos, pues si bien la cuota anual se le impondría sobre una nómina más baja la prima tendría que ser necesariamente más alta.

*Se confirmará la resolución recurrida.*

---

([2]) De la investigación practicada por el Fondo cubriendo varios años surgieron deficiencias sustanciales en cuanto a la nómina declarada por el patrono para la agricultura de caña y lo que resultó de la investigación:

| Año | Nómina Informada | Nómina Investigada |
|---|---|---|
| 1958–59 | $23,046.40 | $37,798.82 |
| 1959–60 | 23,831.19 | 30,971.64 |
| 1960–61 | 32,127.01 | 42,771.68 |