The plaintiffs brought this action to recover $46.70, alleged to be due for wages for work for the week ending 13 September, 1920, and for the recovery of $191.83 bonus, and for $553.60 claimed as damages for breach of contract of employment, the same being wages for the period from 13 September, 1920, to 25 December, 1920, at the rate of pay theretofore earned by plaintiff and his wife.
It was admitted that the plaintiffs were in the employment of the defendant working in his cotton mill during January, 1920, and had been employed theretofore for probably two years; that during the early part of January, 1920, the following notice was posted by the defendant in his mill: "15 January, 1920. On 15 November we posted notice stating that we had made preliminary estimate of our accounts for the year 1919, sufficiently definite to warrant our announcing that on 29 December we would make an increase of 10 per cent in the wages of all mill operatives, and also would again pay the 5 per cent bonus at Christmas time in 1920. We have now completed our accounts for 1919, and find that it is possible for us to not only advance wages 10 per cent, which was done on 29 December, but also to pay 10 per cent bonus at Christmas time in 1920 instead of 5 per cent bonus. Therefore, a 10 per cent bonus will be paid at Christmas time in this year to those who have been continuously in the company's employ since this present month of January. Mays Mills, Incorporated. Maysville, N.C."
The defendant admitted the claim for $46.70 for wages earned in the week prior to 13 September, 1920, and tendered an offer of judgment for this amount, but denied the right of either of the plaintiffs to recover on account of the claim for bonus or for unearned wages on account of *Page 408 
alleged breach of contract of employment. The court below gave judgment for the $46.70 admitted by the defendant, and held that neither of the plaintiffs was entitled to recover on the other claims.
From the above judgment the plaintiffs appealed.
This case presents, for the first time in this Court, the construction of the effect of an offer by employers to extend a bonus to employees provided they remain a specified length of time, which offer is accepted by the employee entering upon his employment upon such inducement. Should the employee fail to execute his part of the agreement by remaining for a specified time, or is dismissed for failure to do efficient work, or for any other good cause he forfeits his claim to the bonus offered. The question here presented is, Can the employer arbitrarily terminate such agreement at any time without legal and sufficient cause.
In this case the evidence of the plaintiff was uncontradicted that the saw the notice of the offer of a bonus of 10 per cent posted in the mill, and thereby he was induced to stay and work until he could draw the bonus; that before the offer of the bonus was made he intended to quit, and would have done so but for its being raised to 10 per cent. His wife and coplaintiff makes the same allegation. There was evidence that the work of the plaintiffs was entirely satisfactory to the employers. He testified that there was no complaint of the work of himself and wife. The foreman, J. D. Norwood, under whom the plaintiff worked, testified that the character of his work was good; that he had no occasion to complain of it, and if there had been any complaint it would have been made to him, and that he had received no complaint in regard to it. He also testified that he had known the plaintiff some four years, and his general reputation was good, and his general reputation as a workman in a cotton mill was good. The witness Robinson, who discharged the plaintiff at the direction of the superintendent, Dawson, stated that he had known Roberts and wife since 1917, and that the work of both was satisfactory to the company. In short, the evidence is that the work of the plaintiff and his wife was entirely satisfactory, and that their discharge was not caused by any dissatisfaction with their work, but because of criticism which Seth Roberts is alleged to have made outside the mill of an officer, but which he denied. Welsh, the chief executive of the mill, testified: "I gave instructions to have Roberts discharged, and my reasons were that he was critical of an officer of the law we had employed there to keep the place clean. I had no other reason." *Page 409 
The plaintiff objected to all the testimony relative to the matters that occurred outside the mill and that were not in any way connected with his work, and excepted to the refusal of the court to exclude such testimony. The plaintiffs contend that the 10 per cent bonus offered was a part of the stipulated compensation for work to be performed, and that the defendant would have no right to discharge the plaintiffs for the reason assigned, and thereby defeat the plaintiffs in their purpose to remain in the mill and work according to the offer contained in the notice as to all who remained continuously in its employment until Christmas. They also contended that the allegations of the conversation outside the mill, if true, which they denied, did not authorize their discharge by the defendant, there being no complaint as to their work; that the defendant could not discharge them without any legal reason authorizing them to do so, and that in effect they did this, and are liable to the plaintiffs for 10 per cent of the wages earned at least up to the time of the discharge as a part of the stipulated compensation for the work actually done.
The plaintiff also excepted because the court instructed the jury that if they believed the evidence and found the facts in accordance therewith to answer the first issue "No," and to save trouble that he would answer it for them "No."
There was conflicting evidence as to the conversation on account of which the plaintiff Roberts was discharged, and we need not in this case pass upon the question whether there was sufficient ground for discharge for whether there was such conversation was a disputed issue of fact, upon which the jury alone was competent to pass. The language which the witnesses for the defendant testified that the male plaintiff used, and for using which was discharged, was as follows: The witness Welsh testified that he "gave instructions to have Roberts discharged, and his reason was that he was critical of an officer of the law that the company had employed to help keep the place clean; that he had no other reason."
L. R. Parker, witness for the defendant, testified that he was an employee of the mill and superintendent of the Sunday School there, and he heard Roberts, on 20 August, 1920, state, in the presence of other employees, "Oh, hell, the way they have Sunday School now they have not a fitten place to go to. The Bible did not teach us to have Sunday School the way they do; that the way it was one man should speak at a time and the way they had Sunday School there, it was not fitten to go to, all chattering at one time." The witness says he told Mr. Brymer about that conversation, and Welsh, the vice president and general manager, had Roberts discharged. Brymer also testified that he was a deputy sheriff, and he had arrested some boys 16 and 17 years old and summoned them to court; that on Monday morning thereafter, some *Page 410 
of these boys being in the crowd, and the matter being mentioned, the plaintiff Roberts spoke up and said: "I consider that a dirty trick for you to be out that time of night bothering the boys. It was not your damned business." The witness says he told Welsh about this conversation of Roberts. Welsh stated that Parker and Brymer had made the above reports to him and he gave orders to have Roberts discharged.
The plaintiff testified that the did not make the statement that the Sunday School was an unfit place for people to go to. He says that in regard to the boys, he stated to defendant's witness, "I don't care if these boys are arrested for gambling, but why do they think they should have a chain-gang sentence? Most of the boys work at night and sleep Saturdays and don't care to go to bed, and were out there for pastime mostly, and furthermore, they did not bother you."
The judge, upon this conflicting evidence, instructed the jury that "If the jury believed the evidence, and find the facts in accordance therewith, then answer the first issue `No.'" The defendant was entitled to have the jury pass upon the evidence and find the truth of the allegation; and further, whether it justified the discharge of the plaintiff from their employment, on which matter we do not need to express an opinion until the facts are found as to what was said.
In 34 Cyc., 1650, it is said that when there is a reward offered, "When the plaintiff has performed part of the service and is prevented by the offerer, or by those for whose acts he is responsible, from completing the work he is entitled to the whole reward, or at least to a compensation on aquantum meruit."
It has become a very general policy with large employers of labor to offer a bonus or additional compensation to employees who shall render continuous and efficient service for a specified period of time. This is not a gratuity or gift, but is an offer on the part of the employer, with whom the offer originates in order to procure efficient and faithful service and continuous employment, and when the employee enters upon the service upon that inducement it becomes a supplementary contract of which the cannot be deprived without sufficient cause. In Payne v. U.S., 269 Fed., 873, it is held by the Court of Appeals of the District of Columbia that "A bonus is not a gift or gratuity, but a sum paid for service or upon a consideration, in addition to or in excess of that which would ordinarily be given."
In Kennicott v. Wayne Co., 16 Wall., 471, the Court approved the following definition from Webster: "It is not a gift or gratuity, but a sum paid for services, or upon a consideration in addition to or in excess of that which would originally be given."
In Youngsberg v. Lamberton, 91 Minn., the Court held that "where one party agreed to render service to the other for a year for a fixed *Page 411 
salary and received as a bonus a percentage of the business of his employer at a specified time, the employee, if discharged, had a right of action accrued up to that time for the profits or bonus earned."
The posting of the notice and offer of a bonus for continuous work under the circumstances above set out, payable on the following Christmas, was a proposal on the part of the mill and the acceptance by the plaintiff by setting in to work until the end of the year, made a contract, provided he did his work satisfactorily, and the discharge of the plaintiff, unless for sufficient cause, would amount to a breach of the contract, and was a wrongful discharge. The defendant could not relieve himself of payment of the bonus earned up to that time unless the discharge was upon sufficient cause.
In 2 Labatt Master and Servant, 1323, sec. 452, it is held that such bonus is a part of the stipulated compensation, and in note 3 it says: "Where it was agreed that the servant was to receive a gift of twenty pounds if he remained to a certain date, it was held that the jury was entitled to take this into account in assessing the amount of damage recoverable for wrongful dismissal."
In 26 Cyc., 1308, it is said: "When the parties mutually terminate a contract of employment before the expiration of the term, a bonus already earned is recoverable." The posting of the notice was an offer to the employees then in the mill that if they would remain until the end of the year they would have the 10 per cent bonus. The plaintiffs accepted this offer in good faith, and in good faith entered upon the performance of their contract resulting from their acceptance, and the employer was liable at least to the extent of a quantum meruit if they discharged the employee without sufficient cause. Even, therefore, if the parties had agreed to terminate the relationship existing between them, the employee would be entitled to the bonus earned; 26 Cyc., 1308, above set out. If they were wrongfully discharged under the authority of 2 Labatt M. S., 1323, above quoted, they were entitled to have the bonus earned.
Certainly the plaintiffs were entitled to have the jury pass upon the fact whether the discharge was justified by their conduct. If the jury believed the testimony of the plaintiffs, their contract, based upon the notice and their acceptance of the offer therein contained, was breached by the defendant without cause.
According to 2 Labatt, p. 1323, the so-called bonus was "a part of the stipulated compensation," and the defendant having accepted the benefit of the continued labors of the plaintiffs could not deprive them of the bonus earned up to that time by discharge from their employment without legal and sufficient grounds. The offer, in accordance with the notice, was the payment of 10 per cent additional to the regular wages *Page 412 
for those who should remain in their service until the following December, and it should have been submitted to a jury whether that contract was breached by the defendant. The fact that the plaintiffs were at liberty to quit work whenever they chose does not alter the case, for by the terms of the offer, which was accepted by the plaintiffs, the latter would lose the bonus of 10 per cent if they voluntarily left the work before the end of the year. It was, therefore, a breach of the contract if the defendant discharged them and prevented the performance of their part of the contract without cause that would justify the termination of their contract of employment. The jury must first find the facts and then it would be a question of law whether the conduct of the male plaintiff was sufficient ground for his discharge.
The subject is nowhere more fully and clearly discussed than inZwolanek v. Mfg. Co., 150 Wisconsin, 517, in which it is held that "an offer by an employer to permit his employees to participate in its surplus earnings, provided they were in the regular employ of the employer for 4,500 hours during 100 consecutive weeks, was in the nature of an offer of a reward for constant and continuous service. Such contract may be made orally, or in writing, either to a particular person or class, or to any and all persons complying with its terms. Until the acceptance of such offer by beginning the performance of the service required, it is merely a proposition; but when the offer, including its terms and conditions, is accepted by performance before it lapses or is revoked, it becomes a binding contract, subject to the laws governing contracts generally. Performance of such service constitutes an acceptance; and thereafter the offer cannot be revoked so as to deprive a person who has acted on the faith thereof of compensation. Where a person performing part of the service for which a reward is offered is prevented by the offerer, or those for whose acts he is responsible, he is entitled to the whole reward, or at least compensation on a quantum meruit." In that case the Court, in speaking of this system of offering bonuses to retain the promise of extra compensation, says that such custom, which is now beginning to be very generally adopted, is beneficial to the employer as well as to the employee. This is self-evident, for it is the employer and not the employee who makes the offer, and who continues or discontinues it as he may find it to his interest. The Court in that case says very continuously in the employ of the same master, and to render efficient service, so as to minimize the probability of discharge. It also tends to relieve the employer of the annoyance of hiring and breaking in new men to take the place of those who might otherwise voluntarily quit, and to insure a full working force at times when jobs are plentiful and *Page 413 
labor is scarce; to allow the employer in such case to repudiate liability on the ground stated would come perilously near conniving at the participation of a fraud; and no court should say that in such case the by-law merely affected the corporation and not third parties. If the corporation desires to have their so-called `by-laws' affect only the corporation and its shareholders, then they should refrain from exploiting them to third persons for the purpose of inducing such persons to act in reliance thereon.
"We regard this law as being simply the offer of a reward to employees for constant and continuous service. The defendant made an offer of extra or additional compensation to any employee who performed a certain number of hours service within a given period, provided net profits were earned, and provided the employee did not quit or was not discharged before a stated time. A reward is a sum of money or other compensation offered to the public generally, or to a class of persons for the performance of a designated service. 34 Cyc., 1730."
In that case the Court further said: "It is not necessary that the person performing this service for which a reward is offered should give notice to the offerer that he accepts the offer; for in such case the party making the offer impliedly dispenses with the actual notice and the doing of the act completes the contract," citing numerous cases. "While the mere offer, not assented to, does constitute a contract, an acceptance of the terms of an offer of reward by any person who complies therewith by performing this service creates a complete and valid contract, provided the performance takes place prior to the withdrawal of the offer. Acting upon an offer, and complying with its terms and conditions, constitutes an acceptance. Wilson v. Stump (103 Cal. 255), 42 Am. St., 111," citing a large number of cases to the same effect.
"It is manifest that the statute of frauds has no application to the case. Until the offer is accepted by beginning performance there is no contract, executory or otherwise. When it is accepted by beginning work the obligation is fastened upon the defendant to pay what is due under it, and it is not essential that the employee should inform the employer that he relied on the offer in undertaking the work."
The Court further held that while as a general proposition the party making an offer of a reward may withdraw it before it is accepted, the offerer of a reward must be held to the exercise of good faith and cannot arbitrarily withdraw the offer without sufficient cause. The employee, by accepting such offer by beginning work, is not obligated to serve a specified time. The penalty is that if the quits work, or is discharged for legal cause, he forfeits the bonus, for the terms of the employment are express that it must be continuous employment for the time specified, *Page 414 
and there is an implied agreement that during employment he shall in good faith render efficient service and not give legal and sufficient ground for discharge.
It is true the wife in this case was not in terms expressly discharged, but peremptory order was given to the husband to get out of the house immediately, and this reasonably implied that his wife should go, too. At least, the management so understood it, for they made no demur to her leaving on that ground.
It appears in this case that the contract for employment was by the week, and hence either party could terminate it at the end of any week. The offer of a bonus and its acceptance by entering upon the work was a supplementary contract for a reward in consideration of the employee remaining in the service for the specified time. It did not change the terms of the contract of employment by the week, but by this agreement the employee, if the failed to remain the specified time, forfeited all claims to the bonus, and on the other hand, if the employer discharged the employee without good and sufficient cause, he was liable to the employee for the bonus lost thereby. Inasmuch as the employee knew that the employment could be terminated at the end of any week, he is entitled, upon such violation of the supplementary contract for continuous service, upon aquantum meruit, for the length of time he served at the rate of 10 per cent on the wages earned up to that date, according to the employer's offer. The employee is not entitled to recover damages for the wages for the unexpired time for the contract of employment was terminable at the end of any week, nor can he recover the bonus for the unexpired time for the bonus for continuous employment was based upon the continuance of the service, which under his contract the employer could terminate. He is entitled to recover if discharged without legal and sufficient cause the bonus of 10 per cent up to the time of the discharge, for that is the extent of the wrong done him by wrongful discharge.
In this case it should have been left to the jury to determine whether the alleged conversation took place at all, and if so, whether it was good and sufficient cause for the discharge. If it was not, then the plaintiff and his wife are entitled to recover upon a quantum meruit for the bonus up to the time they were wrongfully discharged.
The system of offering bonuses for continuous employment has been adopted by many employers, in their own interest, as well as being a step towards a better understanding between employers and employees. The enforcement of such contract can work no harm to employers, for they can discontinue the practice by failing at any time to renew such offers. Some years ago the hours of employment in industrial establishments in this State, especially in the cotton mills, were unlimited *Page 415 
by law. By statute the hours have been reduced to 60 per week, and most, if not all, of the larger cotton mills voluntarily have reduced this to 56 hours, and also increased the rate of compensation as this defendant has done. The employment of children of any age was formerly permissible, but now is restricted by law. Although there has been no legislation requiring it, many of the factories, at least the most prosperous ones, are fitting up their tenement houses with lights, water, and sewerage, and many have established facilities for attendance on the public schools and church. The adoption of the system of offering a bonus in addition to the regular pay for continuous employment is part of the same system for the amelioration of the dealings between these companies and their employees.
The employee being liable to a forfeiture of all bonus if he quits before the specified time, it would be a breach of faith and, as one of the authorities above quoted says, "perilously near the perpetration of a fraud," if the employer were not liable for a breach of such supplementary contract on his part to the extent at least of payment of the bonus earned up to the time of the discharge, upon a quantum meruit basis, when he has discharged the employee for whatever motive if the ground was not legal and sufficient for termination of the offer of extra compensation for continuous service in the employer's service.
New trial.