## BURNS v. LEWIS–HOWE CO.

No. 28765.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

Motion for Rehearing or Transfer to Supreme Court Denied April 16, 1954.

Lashly, Neun & Roberts, Paul W. Lashly, and Frank A. Neun, St. Louis, for appellant.

Coburn, Storckman & Croft, Richmond C. Coburn and Edward E. Murphy, Jr., St. Louis, for respondent.

ANDERSON, Presiding Judge.

Elizabeth Burns and six others brought this action against Lewis-Howe Company, a corporation, to recover the amount of a bonus alleged to have become due and pay-

able to each of them from the defendant for services rendered during the year 1949. The claim of each plaintiff was set forth in separate counts in the petition. After the institution of said suit plaintiff filed a motion for an order severing each of said alleged causes of action and directing that each be tried separately. The court sustained said motion. Plaintiff's counsel thereupon elected to try first the action of Elizabeth Burns. Thereafter, said cause was tried, resulting in a verdict and judgment in favor of Elizabeth Burns in the sum of $221.35, being the full amount of the bonus alleged to be due her. Judgment was rendered accordingly. Thereafter, the court sustained defendant's motion to set aside the verdict and judgment, and entered judgment for defendant in accordance with the latter's motion for a directed verdict filed at the close of the entire case and, in the alternative, sustained defendant's motion for new trial on the ground that the court erred in giving and reading to the jury Instruction No. 1, requested by plaintiff. From this judgment and order, plaintiff has appealed.

The petition alleged that defendant, a manufacturer of drug products, in order to induce its employees to render continuous and faithful service, offered and publicized during the years 1946 to 1951, inclusive, a bonus based upon earnings for the year previous, which bonus was made known to each employee at the time of hiring; that said employee was induced to forego seeking employment elsewhere, and to cooperate with and render faithful, loyal, efficient and productive service to the defendant in consideration of the payment of said bonus to such employee at the close of the calendar year in the predetermined amount based upon length of regular employment.

It was further alleged that the fact the yearly bonus was offered at the time of employment, and annually renewed from 1940 to 1949, was shown by a form letter which accompanied the payment of same, towit:

"To all employees in our employ today and regularly employed for a period of two years or more previous to November 28, 1949, a bonus of 15% based on the earnings paid to the employee for the year previous to and ending on that date.

"To all employees in our employ today and regularly employed for a period of one year or more, but less than two years, previous to November 28, 1949, a bonus of 7½% based on the earnings paid the employee for the year previous to and ending on that date.

"To all employees in our employ today and regularly employed for a period of less than one year previous to November 28, 1949, a bonus of 3¾% based on the earnings paid to the employee from the date employed until November 28, 1949, but in any case not less than $5.00."

It was then alleged that the bonus for regular employment was offered to all employees during the year 1949, and was paid to certain of them, but was not paid to plaintiff; that plaintiff was employed January 28, 1946, and worked continuously for defendant from that date until November 4, 1949, when she was discharged wrongfully, unjustifiably, and without cause; that defendant had expressly offered this bonus to plaintiff; that she had accepted the offer and performed her part of the agreement, and that the wrongful discharge was effected by defendant solely to breach and avoid its contract and agreement made with plaintiff for the payment of said bonus.

It was further alleged that plaintiff's monthly earnings during the period from November 28, 1948, until the date of her discharge on November 4, 1949, were $143 each month, and that she was entitled to the bonus in the amount of 15 per cent of her earnings during said period, in the sum of $258.63, plus interest at six per cent per annum from December 23, 1949, the date when payment was due. Judgment was prayed for the amount alleged to be due, and for the costs of said suit.

Defendant, in its answer, after admitting its corporate existence, specifically denied the allegations of plaintiff's petition. Fur-

ther answering, it was alleged that "even if any agent or employee of the defendant offered to pay a bonus to the plaintiff at any time prior to the actual payment of a bonus, that said offer or promise was beyond the scope of the employment of said agent or employee of the defendant, and that such agent or employee of the defendant exceeded his authority in making any such offer or promise."

As a further defense, it was averred that the alleged promise was not reduced to writing, and that inasmuch as said alleged agreement to pay a bonus for the year 1949 was not to be fully performed within one year from the making of said alleged promise, plaintiff's cause of action was barred by the statute of frauds.

Plaintiff made application for employment at the company's office on January 28, 1946, where she was interviewed by Mr. Clement C. Burkemper, defendant's general superintendent. Plaintiff testified:

"A. He asked me where I had worked before, what I did, and what kind of work I . was looking for. I told him I wasn't particular, it didn't make any difference, I needed the work.

"Q. Did you or he discuss the hours? A. He told me they worked eight hours part of the time, but the biggest part of the time it was nine.

"Q. Daily? A. Yes.

"Q. And how many hours per week? A. Well, we sometimes worked Saturdays and sometimes we didn't.

"Q. Now Mrs. Burns, I want to make sure you understand me. I am asking you what it was the two of you discussed at that time, not later on, but at that time. Do you understand that? A. (No response)

"Q. Did he tell you what pay you would receive? A. Yes, 45¢ an hour.

"Q. Did he tell you what kind of work he would assign you to? A. Packing.

"Q. Did he tell you which department of the company he would assign you to? A. The packing room.

* * * * * *

"Q. Did he discuss with you the policies of the company? A. He explained about the work, yes, sir, if that is what you mean.

* * * * * *

"Q. * * * Now did you at that time have any discussion about the bonus? A. Yes, sir. * * * He said that the first year, each year, we would get a bonus, the money was paid each year that we worked there. The first year we would get three and three-fourths, and the second year we would get seven and a half, and the third year we would get fifteen per cent, and he would pay it each year and they had for some time, he said.

"Q. Where did you get these percentages? Those were the percentages of what? A. Of our earnings.

"Q. For what period? A. For the year. * * * it was paid about two weeks before Christmas, I don't remember just the day. * * * He said they had been paying a bonus and they paid it each year. * * * Well, he said, 'Whenever we hire you, that the company pays a bonus each year, the first year, three and three-fourths, the second year seven and a half, and the third year, fifteen per cent,' and he told me what my work would be."

Plaintiff was put to work in the packing room, filling cardboard cartons with packages of "Tums" and advertising material. It was all hand work, and in doing same plaintiff sat at a table through the middle of which was a conveyor belt which brought the cardboard cartons to her, and on which she placed the filled cartons. She also at times was engaged in placing in envelopes some circulars advertising pills known as "Nature's Remedy". Plaintiff worked at this job continuously until her discharge on November 4, 1949. Her wages were increased from time to time, and at the

time of her discharge she was receiving a wage of 65 cents per hour.

Plaintiff received a bonus for her work in 1946. This bonus was paid pursuant to a resolution of the Board of Directors of the defendant corporation adopted November 22, 1946. The minutes of the meeting of said board showing the adoption of said resolution are as follows:

"On motion of N. H. Howe, the vote was taken to declare a bonus to all employees based as follows:

"To all employees in our employ December 23, 1946, and regularly employed for a period of two years or more previous to November 27, 1946, a bonus of 15% based on the earnings paid to the employee for the year previous to and ending that date.

"To all employees in our employ December 23, 1946, and regularly employed for a period of one year or more, but less than two years, previous to November 27, 1946, a bonus of 7½% based on the earnings paid to the employee for the year previous to and ending on that date.

"To all employees in our employ December 23, 1946, and regularly employed for a period of less than one year previous to November 27, 1946, a bonus of 3¾% based on the earnings paid to the employee from the date employed until November 27, 1946.

"In order to receive this bonus, it is necessary that the employee be in our employ on December 23, 1946."

The bonus paid to plaintiff pursuant to the above mentioned resolution amounted to the sum of $40, and was paid by check. Accompanying the check was the following letter:

"December 23, 1946
"To all employees:
"The Lewis-Howe Company wishes to thank all employees for the splendid co-operation enjoyed during 1946, this co-operation having made possible the payment of a bonus based as follows:

"To all employees in our employ today and regularly employed for a period of two years or more previous to November 27, 1946, a bonus of 15% based on the earnings paid to the employee for the year previous to and ending on that date.

"To all employees in our employ today and regularly employed for a period of one year or more, but less than two years, previous to November 27, 1946, a bonus of 7½% based on the earnings paid to the employee for the year previous to and ending on that date.

"To all employees in our employ today and regularly employed for a period of less than one year previous to November 27, 1946, a bonus of 3¾% based on the earnings paid to the employee from the date employed until November 27, 1946.

"Wishing all employees a very Merry Christmas and Happy New Year.
"Sincerely,
"Lewis-Howe Company
"Per  J. H. Howe
"President"

Plaintiff also received a bonus for the year 1947. Said bonus was paid pursuant to a resolution of the board of directors adopted December 18, 1947, which authorized the payment "To all employees in our employ December 23, 1947, and regularly employed for a period of one year or more, but less than two years, previous to November 26, 1947, a bonus of 7½% based on the earnings paid to the employee for the year previous to and ending on that date."

The amount of the bonus was by said resolution ordered paid December 23, 1947. Payment made pursuant thereto was by check, accompanied by a letter similar to the one which accompanied the 1946 bonus. In 1948 a bonus was paid under a like resolution and paid in the same manner as in previous years. By said resolution, payment was limited to those in the employ of defendant on December 23, 1948. Plaintiff received a bonus under this resolution.

That portion of the 1949 resolution, adopted December 5, 1949, which is material to this case, is as follows:

"To all employees in our employ December 22, 1949, and regularly employed for a period of two years or more previous to November 27, 1949, a bonus of 15% based on the earnings paid to the employee for the year previous to and ending on that date."

The form letter set out in plaintiff's petition, which we have heretofore copied in this opinion, accompanied the payments under said resolution of December 5, 1949. Plaintiff was not paid a bonus for the year 1949.

It was stipulated that the wages paid to plaintiff for the period beginning the week preceding December 5, 1948, and ending November 6, 1949, amounted to $1,475.66, fifteen per cent of which is $221.35.

During the time plaintiff worked for the defendant machines were being installed for doing the work for which plaintiff was hired. Plaintiff did not work at these machines. About six months after plaintiff was employed Mr. Burkemper, the superintendent, asked plaintiff if she wanted to work on the machines. Plaintiff replied that she did not. Plaintiff testified that later, in the spring of 1949, she told Mr. Burkemper she would be willing to work on a machine, and that Mr. Burkemper told her he would "see about it".

Plaintiff testified that during the period she was employed she worked regularly, obeyed instructions, and did the work assigned to her; that she received no complaints from her superiors as to the manner in which she performed her work but, on the contrary, received compliments and expressions of satisfaction from Miss Brock, defendant's forelady.

Mr. Burkemper testified that, as far as he was concerned, Mrs. Burns' services were satisfactory. Mr. Uthe, the defendant's plant manager, testified that plaintiff's attendance record was satisfactory, and that there was nothing in the records about Mrs. Burns being unsatisfactory.

Plaintiff testified that she was given no reason for her discharge. Her employment record, which she introduced at the trial, bore the notation "11-4-49 discharged—not qualified to advance", also, the notation "Ref. to adv."

Appellant contends that the trial court erred in entering judgment for defendant, upon defendant's motion for a directed verdict, for the reason that, under the evidence, a case was made for the jury.

The evidence of plaintiff shows that for a number of years it had been the policy of the defendant to pay a bonus to its employees at the end of each year, based upon length of service. The bonus for each year was authorized by resolution of the board of directors, which resolution set out the terms and conditions under which the amounts were payable. In each instance the bonus voted was for past service and was conditioned upon the recipient being in the employ of the defendant on December 23rd of the year in question. The resolutions were not passed in connection with any previous general offer of a bonus for continuous and faithful service for any given period of time, which would give rise to a valid legal claim in favor of any employee accepting said offer by performing service in reliance thereon. Plaintiff does not rely on a general offer, but contends that as a part of her employment contract she was promised a yearly bonus in the amounts specified in said resolutions, and that she is entitled to recover for breach of that contract.

It appears from plaintiff's testimony that when she made application for employment she was interviewed by Mr. Burkemper, defendant's general superintendent. The latter inquired of plaintiff as to what kind of work she desired, to which plaintiff replied that she wasn't particular as to the nature of the work for the reason that she was in need of employment. Burkemper then advised plaintiff that the work would be for eight hours daily; that she would be paid 45 cents per hour, and would be assigned to the packing room. Plaintiff and Mr. Burkemper then engaged in a conversation about the policies of the company, during which there arose a discussion concerning a bonus.

From plaintiff's testimony it appears that Mr. Burkemper told her at that time that the company had for some time paid a bonus each year, and that employees would get a bonus each year based upon a percentage of wages earned—the first year 3¾%, the second year 7½%, and the third year 15%.

It is our duty in reviewing the evidence upon a motion for a directed verdict to view the evidence in the light most favorable to plaintiff's case, and to give plaintiff the benefit of all favorable inferences therefrom. This does not mean, however, that we should give the evidence a strained construction or draw unreasonable inferences in favor of a plaintiff. Nor should we consider isolated portions of a witness's testimony with reference to a particular fact, but should consider all the testimony of said witness with reference to the subject matter, in order to determine the effect of same.

With the foregoing rules in mind, we have carefully considered the evidence and have reached the conclusion that it would be a strained and unreasonable construction to hold from the evidence adduced that at the time plaintiff was employed the parties intended to contract for the payment of a bonus, or that defendant at said time made an offer of a bonus on the terms set forth in the resolution. There was no express promise made to plaintiff at the time and, in our view, the only reasonable construction to be placed upon the testimony is that Mr. Burkemper was merely explaining the policy of the company to plaintiff. The policy of the company, as shown by plaintiff's own evidence, had been to vote a gratuity each year.

We are not unmindful of those authorities relied upon by plaintiff which hold that one who is promised a bonus for future continuous work for a certain period of time, in addition to regular wages, is entitled to recover a proportional part of the bonus promised upon a wrongful discharge during the period. Such is the case of Croskey v. Kroger Co., Mo.App., 259 S.W.2d 408. A number of these cases are collated in 28 A.L.R., beginning at page 346. On the facts, these cases are not controlling.

In our view, the order and judgment appealed from should be affirmed. It is so ordered.

RUDDY and BENNICK, JJ., concur.