Willis BYERLY, et al., Appellants,

v.

DUKE POWER COMPANY, a corporation, Appellee.

No. 6860.

United States Court of Appeals
Fourth Circuit.

Argued Oct. 19, 1954.

Decided Dec. 9, 1954.

Parker, Circuit Judge, dissented.

Robert S. Cahoon, Greensboro, N. C. (James W. Clontz, High Point, N. C., on brief), for appellants.

W. S. O'B. Robinson, Jr., Charlotte, N. C. (Huger S. King, Greensboro, N. C., and Carl Horn, Jr., Charlotte, N. C., on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit against the Duke Power Company under § 301 of the Labor Management Relations Act, 29 U.S.C.A. § 185, was instituted by the Brotherhood of Railroad Trainmen, an unincorporated association, and certain individuals formerly employed by Duke in the operation of a motor bus transportation system at High Point, North Carolina. It was alleged in the complaint that Duke had broken a collective bargaining contract which it entered into with the Brotherhood in 1953 when it retired from the bus business in High Point and sold its buses and other equipment to one H. F. Moore, and promised in connection with the transfer to pay its employees a cash sum equivalent to sick leave accumulated by them up to the day of sale, although they had not been sick, and also to pay them a cash sum equivalent to their share of retirement benefits under Duke's Employees' Retirement Plan, although they had contributed nothing to the retirement fund and had not reached the retirement age under the plan. The individual claimants were 24 in number.

The total amount of their sickness allowance claims was $11,616.87 and the total amount of their retirement claims was $25,575.95. The case was heard on the pleadings and a stipulation of undisputed facts and exhibits, and the judge being of the opinion that the contract as alleged by the plaintiffs was invalid for lack of consideration moving from them, granted defendant's motion for summary judgment.

The facts on which the decision of the controversy turns may be summarized as follows: Duke operated the High Point bus line for a substantial period of time prior to the transfer to Moore in 1953. On July 30, 1952 Duke entered into two collective bargaining agreements with the Brotherhood covering its bus operators and garage employees respectively, which were to be effective until July 1, 1953 and thereafter until either party gave notice of a desired change. These agreements made no provision for a retirement plan. They did provide for vacation pay and for sickness allowance with pay. In this case the complainants make no claim for vacation pay but admit that all payments thereof have been duly made. As to sickness the agreements provided that each employee who completed one year of continuous service should be entitled to a sick allowance of ten working days and said allowance should thereafter accumulate at the rate of one day for each additional month of continuous service up to a maximum of 30, 45 or 60 days, varying according to their length of service.

The agreements also provided that in the event the transportation properties should be sold, the contracts should terminate unless the purchaser assumed them upon the consummation of the sale; and that the company should give the Brotherhood written notice of the sale of any of the properties at least 60 days prior to the consummation of the sale.

The agreement of sale between Duke and Moore was executed on December 31, 1952 and notice thereof was given to the Brotherhood on January 28, 1953.

The contract of sale was subject to the condition that Moore could obtain approval for such sale from the City Council of High Point and from the North Carolina Utilities Commission; and Moore agreed, in case the sale should be consummated, to make every reasonable endeavor to offer employment to existing employees of the bus system.

The High Point City Council adopted an ordinance granting a bus franchise to Moore and approving the sale unconditionally on April 21, 1953. On May 28, 1953 the sale was consummated and Moore took over the operation of the bus line. All of the employees were offered employment by the buyer and with one exception all of them accepted such employment.

The individual claimants were employees of Duke at all times from December 31, 1952 until May 28, 1953. After the receipt of the written notice of sale, they continued to work for the defendant as bus operators and garage employees at the same rate of pay until the consummation of the sale. They never gave Duke any written notice of a desire on their part to change or modify the provisions of the collective bargaining contracts of July 30, 1952.

The transactions on which the complainants base their claim that a valid contract was made took place on March 4, 1953 and April 7, 1953 when W. D. Melton, Jr., Assistant General Counsel for Duke, appeared before the City Council of High Point and discussed with the Council the details of the proposed sale for which the purchaser had requested the Council's approval. Representatives and members of the Brotherhood and of Duke were present at these meetings. The complainants allege that at these meetings Melton discussed the matters of retirement benefits, vacation pay and sickness allowance, and promised verbally to pay to the plaintiffs an amount equal to the cash sick allowance for all accumulated sick leave and lump sums equal to retirement benefits accrued to the date of the consummation of the sale. Duke denied that any such promise

was made, but since a summary judgment was entered for the defendant at its request, it is now assumed that the promises were made.

It is conceded that except as to claims for sickness allowance already paid, none of the plaintiffs has been unable to perform work on account of personal illness while employed by Duke and none of them has filed any claim therefor; and that Duke has not paid any plaintiff any sick benefits except for the time actually lost from work because of sickness prior to May 28, 1953; or any sum equivalent to the sickness allowance which had accumulated prior to May 28, 1953.

No plaintiff has attained the age of 65, and no plaintiff has requested early retirement under the provisions for retirement at age 60, as set forth in the defendant's Employees' Retirement Plan. Defendant has not paid any sum equivalent to any credit accumulated under the plan prior to May 28, 1953.

No provision for retirement or pension benefits was included in the contracts of July 30, 1952. The Duke Retirement Plan was adopted in compliance with the laws of the State of New Jersey by a vote of two-thirds of the stockholders. The entire cost of the benefits and of the administration are borne by Duke and the employees contribute nothing. The assets of the Plan are held in trust by the Guaranty Trust Company of New York. No benefits are payable under the Plan until December 31 of the year in which an employee reaches 65 years of age. The Plan provides that it shall not be held as part of a contract of employment or as one of the considerations for entering into such a contract. In the event of a sale by Duke of a branch or division of the company, the Plan provides that the employees of such branch who remain in the employ of the purchaser shall have their benefits determined in accordance with provisions therein set out. These provisions provided for the allocation of a portion of the trust fund for the benefit credits accrued to the date of disposal, and for the setting apart of the allocations in a separate account on the books of the trust to be administered subject to the provisions of the Plan. Thereafter these allocations are to be turned over to the purchaser if he effects a Retirement Plan of his own and if not, the portion allocated is to be held in a separate account for the benefit of employees taken over by the purchaser so that they may continue to participate in the Plan so long as they continue in their employment.

After the sale of the High Point Bus Line, the Board of Directors of Duke passed a resolution in which they authorized the Retirement Plan Committee and the Guaranty Trust Company of New York, as trustee under the plan, to set up a separate account of the plan and trust, and authorized the officers of the company to pay to the Trust Company, to be held in a separate account $2268.36 to complete the funding of the private service cost with respect to the employees of the bus line who became employees of the purchaser upon taking over the lines and also directed that the portion of the fund held by the Trust Company in the amount of $24,510.45, the funded portion of the then value of the benefit credits payable at age 65, accrued to May 28, 1953, be allocated and set aside in the separate account which the Trust Company was directed to hold and administer subject to the provisions of the plan. These amounts were set aside in accordance with the resolution in the special account and are now held in trust for the benefit of said employees who may hereafter qualify for benefits by attaining the age of 65 while in the employ of the purchaser.

The assertion of the plaintiffs that a binding contract was created under the circumstances is set out as follows in paragraphs VII, VIII and IX of the complaint.

### VII

On and after February 1, 1953, the Company announced its intent and desire to dispose of and sell its public transportation and bus system, line and equipment which it then operated in the City

of High Point, North Carolina, and its environs, and then and thereafter engaged in negotiations and discussions with representatives of the City of High Point, the BRT and of the prospective and ultimate purchaser of said bus line in order to work out terms and conditions of the sale and transfer as it would affect interested parties.

### VIII·

In the course of said negotiations and discussions the Company agreed, in connection with the closing of the transaction of selling and transferring the said bus line, to pay to each of the individual plaintiffs named herein a sum of money equal to the pay they would receive for vacation pay and for sick leave if they drew pay for all sick leave and vacation benefits which they had accumulated up to the date of the transfer of the said bus line to the said purchaser, and to pay to each of the said individual plaintiffs an amount and sum of money equal to the interest and accumulated credit each had in an Employees' Retirement Plan established and operated for the benefit of said individual plaintiffs, among others, they being, at the time, employed by said Company as bus operators.

### IX

The foregoing agreement was accepted by the BRT as a settlement of rights under the aforesaid collective bargaining agreement, and it constitutes a valid and binding collective bargaining contract between the BRT and the Company, the individual plaintiffs herein, among others, being beneficiaries thereof. Said individual plaintiffs were advised of the Company's said agreement, and thereafter continued to work for said company and perform services for said Company as bus operators, and to cooperate with the Company in making an orderly and successful transfer of its said operations and bus line to said purchaser, all in reliance upon said agreement.

■■ In our opinion, a summary judgment for the defendant was required under these undisputed facts, even if it be assumed that Melton made the statements attributed to him. It is a settled rule of law, with certain well defined exceptions, that a consideration is an essential element of a simple contract and hence a promise is binding only if consideration is given for it. See 12 Am. Jur., Contracts, § 72; Williston on Contracts, Rev.Ed., § 18; Festerman v. Parker, 32 N.C. 474; Peoples Building and Loan Association v. Swaim, 198 N. C. 14, 150 S.E. 668; Craig v. Price, 210 N.C. 739, 188 S.E. 321; Stonestreet v. Southern Oil Co., 226 N.C. 261, 37 S.E. 2d 676; Jordan v. Maynard, 231 N.C. 101, 56 S.E.2d 26. Thus, it is set out in the Restatement of Contracts, § 19, that a sufficient consideration is one of the legal requirements for the formation of an informal contract,[1] except as otherwise stated in §§ 85–90 and 535. Consideration for a promise is defined in § 75 as an act or a forbearance, or the creation, modification or destruction of a legal relation, or a return promise, bargained for and given in exchange for the promise. Hence, it is said in § 75, Comment B, that in effect consideration is the price bargained for and paid for a promise.

■ The undisputed facts show that the complainants furnished nothing which came within the terms of this definition. Their status as employees under the collective bargaining contracts of July 30, 1952, between the Brotherhood and Duke, remained the same during the transfer period from December 31, 1952 to May 28, 1953, as it was prior thereto. They performed the services and received the compensation provided by these contracts, and thereafter of their own accord they remained in the employ of the buyer. They were not denied any sick allowances to which they were entitled under these contracts or any retirement benefits to which they

1. In the terminology of the Restatement § 7, formal contracts are contracts under

seal, recognizances and negotiable instruments.

were entitled under Duke's voluntary retirement plan. Nothing in the contracts or the plan entitled them to the sums claimed in this suit.

The exceptions to the rule, that consideration must be given to validate a contract, which are listed in §§ 85–89 and 535 have no bearing on this case. They relate to a promise to pay a debt barred by the statute of limitations, or to a promise to pay a debt discharged in bankruptcy, or to a promise to perform a duty in spite of the non-performance of a condition, or to a promise to perform a voidable duty, or to a renewal of a usurious bargain.

The complainants seem to pitch their case on the exception contained in § 90, which provides:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding, if injustice can be avoided only by enforcement of the promise."

The complainants allege in § IX of their complaint that they accepted the company's agreement "in settlement of their rights under the two collective bargaining agreements;" and that after they received notice of the proposed sale, they "continued to work for said company and perform service for said company as bus operators and to cooperate with the company in making an orderly and successful transfer of its said operations and bus line to said purchaser, all in reliance upon said agreement."

It is obvious, however, that these allegations do not bring the case within the terms of the exception. In view of the admitted facts it is meaningless to say that the complainants accepted the company's promise in settlement of their rights under the collective bargaining agreements, because, as we have seen, these agreements gave them no claim to the benefits promised by Melton. It is also without significance that they continued to work for the company until it turned over the business to its successor. In the first place they were paid in full for these services, in accordance with the terms of the collective bargaining agreements; and second, they were under no obligation to remain with the company during the transfer period but carried on of their own free will and accord. Neither the Brotherhood nor the complainants promised that they would remain with the company until the transfer of the line had been finally accomplished. It is clear, therefore, that the company's promise was not given in exchange for any act or forbearance or promise on behalf of the claimants, but was entirely voluntary and gratuitous. Nor was the promise given in exchange for the ordinance of the City Council since the assent of that body to the transfer was unconditional.

Aside from all else, the determining factor is that the element of injustice, which is essential to the application of § 90 of the Restatement, is entirely lacking in this case. This subject is discussed in Williston on Contracts, Rev.Ed., § 139, where the term "promissory estoppel" is given to the situation which arises when a promisee, relying on a gratuitous promise, has suffered detriment. Illustrations of the principle are found in the cases cited to the section, and also in Comments 1, 2 and 3 of § 90 of the Restatement. In the pending case it cannot be said in the words of § 90 that "injustice can be avoided only by enforcement of the promise." Quite the contrary is true. The complainants have not acted to their detriment but have been paid in full for their work; and if the company were required to pay the claims in suit the complainants would receive money to which they have no legal right and the provisions of the Retirement Plan established by the company for the benefit of its employees would be violated.

Affirmed.

PARKER, Chief Judge (dissenting).

Assuming the allegations of the complaint to be true, as we must on this ap-

peal, I do not think it can be said that the promise of defendant upon which plaintiffs rely was void for lack of consideration; and this is the only question before us. Plaintiffs were working for defendant pursuant to the terms of a collective bargaining agreement which provided for vacation pay and accumulated sick leave.[1] They also had rights under a retirement plan which had been established by the company. The company was anxious to sell its bus line in High Point to a prospective purchaser and to this end the approval of the sale by the City Council of High Point was necessary. The allegation of the complaint is that in the course of negotiations with representatives of the City Council, the company agreed with the bargaining representative of plaintiffs that it would pay to plaintiffs a sum of money "equal to the pay they would receive for vacation pay and for sick leave" and the benefits to which they were then entitled under the retirement plan. It is further alleged that this agreement was accepted by the bargaining representative of plaintiffs, who thereafter continued to work for the company and cooperated with it "in making an orderly and successful transfer of its said operations and bus line to said purchaser, all in reliance upon said agreement."

Consideration for the promise alleged was the agreement on the part of plaintiffs to accept it in settlement of their rights and equities with respect to sick leave, and vacation and retirement pay. Defendant has recognized their rights with respect to vacation pay; and that they had rights with respect to accumulated sick leave and retirement benefits is perfectly clear. These rights are almost invariably considered in fixing the wage rate and in a very real sense are earned just as wages are earned by the labor of the employee. They may not be ignored because an employee has not been sick or has not reached retirement age, for the amount to which the employee is entitled thereunder is dependent upon length of service. All of this would be lost by a sale of the business to a new owner unless protected in some way in connection with the sale; and that such protection might be had was doubtless one of the reasons why the collective bargaining agreement provided that the employees be given 60 days notice of any sale of the business. Certainly, how such rights of the employees were to be dealt with in event of sale was a proper subject of bargaining and of a promise on the part of the employer. The acceptance of such promise on the part of the employees amounts to a promise on their part not to seek other means of protecting their rights in the premises and is a sufficient consideration to support the promise of the employer. The mutual promises furnish the consideration for each other as in any other case of a settlement of rights which might give rise to controversy. Of course, any promise made to the bargaining representative of plaintiffs in settlement of rights under the collective bargaining agreement inured to their benefit. See J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; N. L. R. B. v. Highland Park Mfg. Co., 4 Cir., 110 F.2d 632, 638.

Consideration, however, does not consist necessarily of a payment or a promise. It may consist of any act or for-

---

1. It should be borne in mind, in this connection, that the rights of the employees in the accumulated sick leave were a matter of substance and could not be ignored because they had not been sick. Under the provision relating to this matter, an employee was entitled to only 10 days sick leave with pay during the first year of employment, but this was gradually increased to a maximum of 60 days in the case of employees of long service. This right to be paid full wages for an absence of 60 days due to sickness was a valuable right and one which presumably had been taken into account in the negotiation of the wage rate. It would be lost to the employees upon sale of the bus line by the company, unless protected in some way in connection with the contract of sale. The same was true with respect to vacation pay and their rights under the retirement plan.

bearance constituting benefit to the promisor or detriment to the promisee. A.L.I. Restatement of Contracts, sec. 75 et seq.; 12 Am.Jur., p. 584, sec. 91. Here the parties were operating under a valid collective bargaining agreement which entitled plaintiffs to certain accumulated sick benefits as well as vacation pay, and under the retirement plan of the company they were entitled to certain retirement benefits. The company was proposing to sell out its business to a purchaser with the resultant possibility that all of these benefits accumulated through service to the company might be lost. Plaintiffs would naturally oppose the sale and transfer unless their rights in these benefits were safeguarded, and their opposition would be a serious matter if manifested by striking or quitting work or by opposing the sale before the Council, whose approval was a necessary condition of its going through. It was of importance to the company, therefore, that the employees approve the sale and continue their services while it was being negotiated;[2] and if as a means of securing the approval of the sale by the employees and their continued service pending its consummation the company promised to make payments to them on account of these accumulated benefits, consideration for the promise is to be found in the continuation of their service and their cooperation in bringing about the sale and the orderly transfer of the company's business. I think that this unquestionably constituted consideration for the promise, but, apart from this, if the company secured their cooperation and continued service through the promise, it certainly ought not be heard, after the sale has been consummated, to say that the promise was void for lack of consideration. As said in section 90 of A.L.I. Restatement of Contracts:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

It is argued that since the plaintiffs have been paid their wages for the services rendered after the making of the promise, the services rendered cannot constitute consideration for the promise. The answer is that, if the allegations of the complaint are accepted, plaintiffs were promised the amounts sued for in addition to the wages that they were paid and that the continued services constituted consideration for the promise as well as for the wages on the same principle as that which applies in the case of a bonus promised employees in addition to regular wages. See 35 Am.Jur., p. 502; Kerbaugh, Inc. v. Gray, 2 Cir., 212 F. 716; George A. Fuller Co. v. Brown, 4 Cir., 15 F.2d 672; Roberts v. Mays Mills, 184 N.C. 406, 114 S.E. 530, 28 A.L.R. 338; Scott v. J. F. Duthie & Co., 125 Wash. 470, 216 P. 853, 28 A.L.R. 328 and note. The employees were not bound to continue their service to the company; and, if they did continue as a result of the promise made to them, this was sufficient consideration to support the promise.

It is no answer to this to say that the company has paid the employees for vacation time and has arranged for the retirement benefits to be transferred so that they may apply to service rendered the purchaser of the business. The suit is on the promise alleged in the complaint; and the only question before us in the present posture of the case is whether on the pleadings and the facts as admitted that promise can be held void for lack of consideration. I do not think that it can be so held. I would remand the case for the taking of testimony without any expression of opinion on the facts.

2. Nearly two months elapsed between the date of the promise and the consummation of the sale.