Monllor & Boscio, Sucrs., Inc., Appellant, *v.* Industrial Commission of Puerto Rico, etc., Respondent.

No. CI-62-21.     Decided November 4, 1963.

*Leopoldo Tormes García* and *Pascual F. Lanauze Ortiz* for appellant. *Donald R. Dexter* and *Carmen Ana Archeval* for the State Insurance Fund.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

The Manager of the State Insurance Fund conducted through its accountant an investigation into the accounting books of the firm Monllor y Boscio, Sucrs., Inc., and found a difference between the payrolls reported to the State Insurance Fund and the entries in the employer's accounting books. The investigation comprised the years 1954–55, 1955–56, 1956–57, 1957–58 and 1958–59, and the deficiency consisted in that the wage payroll reported to the Insurance Fund did not include the compensation paid to the laborers for vacation[1] nor the compensation paid them at the end of the year, denominated in the employer's books "Additional Compensation to Employees."

In May 1961 the Manager wrote a letter to the employer informing it of the result of the investigation and that he would proceed to liquidate the policy in accordance with such result, if found agreeable.

Feeling aggrieved, the employer appealed to the Industrial Commission alleging fundamentally (1) that the Manager of the Insurance Fund is without power to levy the additional premiums in the manner and opportunity in which he did; and (2) that the bonuses paid to its employees at the end of the year are mere gratuities which are not in-

---

[1] At the hearing before the Industrial Commission the employer admitted the correctness of the determination of the Manager of the Fund on the payments for vacation made to the laborers.

cludible in the wage payroll for the purpose of computing the insurance premium.

The Commission decided against the employer. It upheld the power or faculty of the Manager of the Insurance Fund to levy the additional premiums in question pursuant to the provisions of § 25 of the Workmen's Accident Compensation Act (11 L.P.R.A. § 26), and further held that the payments made by employer Monllor y Boscio to its employees at the end of the year, although they did not actually form part of the service contract, constitute bonuses rather than mere gratuities, since such payments were made to all the employees and had been paid during the past 20 years, thereby creating an expectancy in the laborer.

The employer alleges before this Court that the preceding determinations of the Commission are erroneous.

It maintains that "the 'powers' of the Manager to levy additional premiums are limited to time, namely, the time the employer executes the policy or extends it, or renders his report on the wages paid, as clearly provided in the first paragraph of § 25 of the Compensation Act."

A similar question was raised in *American R.R. Co.* v. *Industrial Commission*, 63 P.R.R. 598 (1944). We decided the issue against the employer. At p. 601 we said: "The arguments set forth by the petitioner are not convincing. It is true that according to a literal and strict construction of said Sections, the manager must take as a basis for assessing and levying the annual premiums to be paid by the employer 'the total amount of wages *paid* . . . during the year prior to the levying of the premiums'; that the premiums shall be fixed as soon as the manager receives the report provided by § 27 of the act; and that in the case at bar the manager assessed and collected from the petitioner the premiums corresponding to the years in controversy, taking as a basis for each one of said years the total amount of the wages paid during the preceding year. However, we

find nothing in the cited Sections, nor is there any provision in the Workmen's Compensation Act, which forbids the Manager of the State Fund to levy and collect premiums on the wages that an insured should have paid his workmen under the statute in force, during a fixed year, and which he failed to pay until after the expiration of said year." Further on at p. 604 we added: "The plan for workmen's insurance against labor accidents and occupational diseases cannot exist without a solvent fund; and the solvency of the State Insurance Fund cannot be maintained if the manager fails to collect from the employers the premiums on the amounts earned by their workmen during each fiscal year, disregarding the date on which payment was made to the workmen. The underlying principle of § 25 of the Act is to render possible the collection of the premiums in advance, taking as a basis the total amount of wages paid during the preceding year. Section 26 provides the proceeding under which the employer pays and the manager collects the premiums corresponding to a specific fiscal year, on the basis of the total amount paid to the workmen during that same year. In accordance with said Section, at the end of the fiscal year the manager shall compare the payroll for such fiscal year with the payroll of the preceding year on the basis of which the premiums of the year under liquidation were tentatively assessed. If the payroll for this year is greater than that of the previous year, the manager shall assess and levy and the Treasurer shall collect, on the difference, additional premiums; and if the payroll is less than that of the previous year, the manager shall refund to the employer the difference in his favor. The application of said Section makes possible the liquidation of the premiums corresponding to each fiscal year, on the basis of the total amount in the payroll of the wages earned and paid on said year, and it prevents the Fund from enriching itself at the expense of the employer and vice versa."

" 'Equity regards that as done which ought to be done.' This old and wise maxim seems apposite to a case like the present one. The petitioner finally performed—*nunc pro tunc* —on November 4, 1941, that which it ought to have done at the time when it paid its workmen for work accomplished during the years 1938 to 1942. It is only fair and just that we consider the payments made in 1941 as if they had been made at the time when they should have been made under the law, for all legal purposes, including the assessment, levying, and collection of the premiums corresponding to the amounts thus paid. To hold the contrary would be equivalent to permitting the petitioner to benefit and enrich itself as a result of its own fault, negligence, or mistake in not complying with the law." See, also, *P.R. Am. Sugar Refinery, Inc.* v. *Industrial Commission*, 63 P.R.R. 611 (1944).

The difference between *American R.R. Co.* and the instant case consists in that employer Monllor y Boscio, Sucrs., Inc., paid the additional salaries during all the years in controversy, but did not include them in its report to the Fund on the wages paid on the theory that such additional payments were not salaries but rather mere gratuities.[2] If its theory is correct, the assessment, levy and collection of the additional premiums notified by the Manager would not lie. It is therefore necessary to make a brief summary of the evidence considered by the Commission in ruling that such additional payments were bonuses rather than mere gratuities.

Juan Luis Boscio, president of Monllor & Boscio, Sucrs., Inc., testified, briefly, that he himself hired the laborers; that a fixed salary was assigned to every employee; that the contracts between employer and employee were made

---

[2] Subdivision (g) of § 19–11 of 11 R.&R.P.R. (Rules and Regulations) provides: "The Manager shall also have power at any time to effect any change in a policy for its adjustment if it is found that the information given by the employer at the time the policy was issued or renewed was incomplete or inexact."

verbally and· for an indefinite period; that since the commencement of "the work", every time a reasonable profit was realized a Christmas gift or bonus was granted to every employee at the end of the year; that at the time of hiring the laborers no mention of bonus was made; that the grant of the bonus is absolutely discretionary with the employer, depending on whether the corporation realized profits; that there was in fact one year (1959) when no bonus was paid because the corporation did not realize profits, and the bonuses have not been uniform.

Upon questioning by the Manager of the State Insurance Fund, Boscio testified that for the past 20 years the employer has been paying a "Christmas bonus" to all its employees, and admitted that every employee of the firm Monllor & Boscio may have the right to expect or have a reasonable expectancy that if the firm realizes profits every employee will receive a "Christmas bonus."

Juan Ralat was the Insurance Fund accountant who audited the accounting books of the firm Monllor & Boscio. Having been called as a witness by the employer, he testified that Monllor & Boscio entered in its books the payment made to its employees at the end of the year as "Additional Compensation to Employees," and that they keep "a wage account in which they set aside from the profits a certain amount to be paid upon the closing of accounts and then make the payment in the month of December."

Ángel Lao Santiago testified that he is the accountant of the firm Monllor & Boscio since 1934, and has never known of any case in which a bonus has been promised to an employee at the time of hiring him, the granting or not of the bonus being discretionary with Boscio.

Santiago, the Director of the Bureau of Actuarial Services and Accounting of the State Insurance Fund, testified that "the administrative practice as to the classification of payrolls for the purpose of assessment and levy of pre-

miums in those cases in which the payment is not the direct result of work hours, is governed by the Rules of Bulletin No. 8 to Govern Insurance Compensation for Labor Accidents." He testified further: "It has been established at all times that the gratuity is a bonus when it is enforceable or there is some fortuitous prospect, which is considered as an expectancy, based on the continuity of the grant. If the bonus is paid every year, according to the examination of the books, in that case we consider it as an expectancy in the laborer, and hence we regard it as a bonus. When it forms part of the agreement, we also regard it as a bonus."

The Workmen's Accident Compensation Act (11 L.P.R.A. § 1 *et seq.*) provides that every insured employer shall, on reporting his annual payrolls, include therein the wages paid to all the workmen and employees working for him. Section 19. It authorizes and empowers the Manager of the State Insurance Fund to assess and levy on every regular or permanent employer of workmen and employees affected by this Act, and he is ordered to assess and levy annual premiums *on the total amount of wages paid* by the employer to workmen and employees. Section 25. The fifth paragraph of this same section provides: "The premiums for regular or permanent employers shall be levied as soon as the payroll return hereinafter referred to is received in the office of the Manager, the basis therefor, subject to investigation and revision by the Manager, to be *the total amount paid by the employer for wages, salaries, and other compensation* paid to the laborers employed by him during the previous year and who were or would have been entitled to the benefits of this chapter." (Italics ours.)

By virtue of the power vested in him by the Act,[3] the

---

[3] Subdivision (b), par. 8, of § 6 of the Act provides: ". . . The Manager shall have power to prescribe reasonable and suitable rules to regulate the administration of the State Fund, which rules, on being approved by the Governor and duly promulgated by the Secretary of State, shall have the force of law."

Manager approved, with the force of law, a Regulation to govern the Administration of the State Fund.[4]

That Regulation provides that the premium, except as otherwise provided therein, shall be calculated on the basis of remuneration, that is, the money paid as compensation for services rendered under the contract of hire, and shall include the value of room and board or other similar benefits. Section 19–4(a). Whenever the board or lodging or other similar benefit constitutes part of the worker's or employee's earnings, the employer shall so set forth in his payrolls together with the corresponding value, and in any reports which he is bound to submit to the State Insurance Fund. Section 19–4(c). Lastly, subd. (e) of the same section provides:

"(e) Whenever employees are remunerated in whole or in part by bonuses, commissions, or on the basis of piecework, or any basis other than that of time actually engaged in work, or by store certificates, merchandise, credits, or any other substitute of money, such form of payment shall be considered as wages or part wages and shall be included in the actual remuneration earned and reported at the time of calculating the policy premiums. The statement of remuneration shall include extra wages for all overtime work, wages paid during holidays, vacation or sickness periods; but shall not, however, include special reward for meritorious achievements for discovery, nor mere gratuities, nor the result of voluntary profit sharing arrangements, unless they are a part of the contract of employment." (Titles 7 to 12, p. 401.)

■ Under the preceding regulatory provision, whenever employees are remunerated in whole or in part by bonuses, such form of payment shall be considered as wages or part wages and shall be included in the actual remuneration earned for the purposes of calculating the policy premium. However,

---

[4] Bulletin No. 8, Rules to Govern Workmen's Accident Compensation Insurance, prescribed by the Manager and approved and promulgated by the Governor on July 1, 1942. 11 R.&R.P.R. §§ 19–1 to 19–11.

the statement of remuneration shall not include mere gratuities as additional salaries.

We have already seen that the Manager has interpreted the Regulation in the sense that "the gratuity is a bonus whenever it is enforceable or there is a fortuitous prospect, which is considered as an 'expectancy,' based on the continuity of the grant. If the bonus is paid every year, according to an examination of the books, in that case we consider it as an 'expectancy' in the laborer and, hence, as a bonus. When it forms part of the agreement, we also consider it as a bonus."

■ Although the rulings, conclusions, and interpretations of specialized administrative agencies are not controlling upon the courts, they are entitled to great weight and respect. As stated in *Skidmore* v. *Swift & Co.*, 323 U.S. 134:

"We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control."

See, also, *South P.R. Sugar Co.* v. *Sugar Board; Mercado, Int.*, 82 P.R.R. 814, 831 (1961), and *Colonos de Santa Juana* v. *Sugar Board*, 77 P.R.R. 371 (1954).

It cannot be assuredly stated that there exists harmony in the decisions of the American courts as to when a gratuity is considered a bonus and when it is considered as a mere gratuity, for the purpose of its computation as part of the worker's or employee's salary to determine the corresponding compensation. Some cases consider as a controlling factor, for the purpose of distinction, the fact of whether or not the bonus is enforceable by the worker or employee. There have

been considered as controlling factors of enforceability (1) where the promise and offer of bonus is part of the service contract; (2) where in response thereto the worker agrees to continue in the service of the employer; and (3) where the bonus is granted in payment for faithful services.[5] Other cases have held that even though the bonus does not expressly form part of the service contract, if it is awarded regularly over a period of weeks, months, or years in such a way that the worker expects it, it might be considered that there exists a promise or implied agreement between the employer and the worker.[6]

As a general rule, it has been held that bonuses awarded casually or sporadically by the employer to the employee are mere gratuities not computable as part of the employee's salary.[7]

■ However, the question for decision in this case is not whether the workers and employees of Monllor & Boscio, Sucrs., Inc., have a right to demand from their employer payment of the bonus in question. The only question for decision is whether the amounts paid to those workers and employees by way of bonuses should be included in the employer's payroll as part of their salaries for the purpose of computing the insurance premium, all in the light of our own laws and regulations.

■ We have already seen that § 25 makes it the duty of the Manager to assess and levy on every employer affected by the Act annual premiums on the total amount of wages

---

[5] *Duncan* v. *Cone*, 85 S.E. 203; *Chubb* v. *Allegheny Country Club*, 24 A.2d 550; *Barron* v. *Ambart*, 167 P.2d 925; *Ellis* v. *Victor Electric Products*, 88 N.E.2d 275; *Burns* v. *Lewis Howe Co.*, 266 S.W.2d 14; *Judd* v. *Wasie*, 211 F.2d 826; *Borden* v. *Skinner Chuck Co.*, 150 A.2d 607; *Parrish* v. *General Motors Corp.*, 137 So.2d 255.

[6] *Powell* v. *Republic Creosoting Co.*, 19 P.2d 919; *Wineburgh* v. *Seeman Bros.*, 21 N.Y.S.2d 180; *Moss* v. *Aluminum Co.*, 276 S.W. 1052; *Roberts* v. *Mays Mills*, 114 S.E. 530.

[7] 58 Am. Jur. 798.

paid to the workers and employees. The same section provides that the Manager shall take as a basis, subject to investigation and revision, the total amount of wages, salaries, and other compensation paid by the employer to the workers employed by him during the previous year. We have also seen that the Regulations to Govern the Administration of the State Fund, which have force of law, provide that whenever the employees are remunerated in whole or in part by bonuses, such form of payment shall be considered as wages or part wages and shall be included in the actual remuneration earned for the purpose of computing the policy premium. And the administrative interpretation of the Regulations has been in the sense that if the bonus is not part of the agreement, it is regarded as a bonus rather than a mere gratuity whenever the continuity of the grant creates in the employee the expectancy of receiving it.

Although the bonus granted by appellee to its employees is not part of the contract of employment, the fact is that the employer has established the practice of awarding bonuses to all its employees, year after year, over a period of some 20 years, with the exception of only one year in which the firm did not receive profits. Boscio himself testified that every employee of the firm has the right to expect or to have a reasonable expectancy that if the firm receives profits, every employee will receive a Christmas bonus. Furthermore, the amounts awarded to the employees by way of Christmas bonuses were entered by the employer on the books as "Additional Compensation to Employees." Actually, the employer took out of the wage account certain amounts from the profits to be paid to its employees at the end of the year.

In the light of these facts and of the Act and Regulations above-mentioned, we agree that the Industrial Commission did not err in sustaining the decision of the Manager of the State Insurance Fund.

Its decision will be affirmed.